Tinesha LEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00064–CR.

Court of Appeals of Texas,
Austin.

July 24, 1997.

Linda Icenhauer–Ramirez, Icenhauer–Ramirez & Hubner, P.C., Austin, for appellant.

Ronald Earle, District Attorney, Jonathan D. Stick, Assistant District Attorney, Austin, for state.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

CARROLL, Chief Justice.

A jury convicted appellant Tinesha Lee of capital murder and the court sentenced her to imprisonment for life.[1] Lee appeals her conviction in six points of error, all relating to the trial court's adverse rulings on three *Batson* challenges she raised before trial. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We will affirm the judgment of conviction.

## BACKGROUND

At the conclusion of voir dire proceedings, the State exercised three of its peremptory strikes against venirepersons Stephen Jones, Angie Rojas, and Luiz Gaipo. All three were apparently members of minority ethnic groups. After the jurors were chosen but before they were sworn, Lee objected to the State's striking the three panel members; she alleged the State struck them solely on the basis of their race in violation of the Code of Criminal Procedure and *Batson. See* Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989); *Batson,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The trial court found that Lee had made a prima facie showing of discrimination and the State offered explanations for its strikes. The court then found that the State had provided race-neutral explanations for each of the three strikes. After Lee had an opportunity to rebut the State's explanations, the trial court found that Lee had failed to prove the State's reasons were mere pretext. The court accordingly overruled Lee's *Batson* challenges.

Lee challenges the trial court's ruling in six points of error. With respect to each venireperson, she raises two points of error: one alleging the trial court violated article 35.261 of the Code of Criminal Procedure when the court overruled the challenge and the other alleging the trial court violated *Batson.* She does not argue that her rights under the two legal authorities differ.

## DISCUSSION

The State may not exclude a potential juror by using a peremptory challenge based on the juror's race. Tex.Code Crim. Proc. Ann. art. 35.261; *Batson,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. To invoke *Batson* protections, a defendant must raise an inference that the State purposefully discriminated by using its peremptory strikes. *E.g., Purkett v. Elem,* 514 U.S. 765, 768–69, 115 S.Ct. 1769, 1771–72, 131 L.Ed.2d 834 (1995). The prosecutor must then present an explanation for its strikes that is facially race-neutral. *Id.* The defendant bears the burden of ultimately persuading the trial court that the State's "neutral explanation" is really a pretext for discrimination. *Id.* We will not disturb the trial court's resolution of a *Batson* issue unless we find the court's findings were clearly erroneous. *Id.* Under this standard of review, we defer to the trial court's decision unless we are left with a definite and firm conviction that a mistake has been committed. *Id.*

■ The State argues we need not address Lee's challenges because the record does not contain evidence that the challenged jurors were members of minority groups. The record contains only Lee's allegations that the jurors were members of minority groups. The State did not, however, contend before the trial court that the excluded jurors were not minorities. Furthermore, the State does not argue on appeal that the trial court erred in finding Lee had made a prima facie showing of racial discrimination. Therefore, we will assume for purposes of discussing Lee's points of error that Jones, Rojas, and Gaipo were members of minority ethnic groups.

### Venireperson Jones

■ According to Lee, Stephen Jones was one of two African American venirepersons in the strike zone. When Lee pointed out

1. Lee was indicted for the offense of capital murder on May 13, 1992. A jury convicted her of the offense but this Court reversed the convic-

tion and remanded the cause for a new trial. A jury again convicted Lee of capital murder; this is the appeal of the second conviction.

that the State had stricken fifty percent of the African American panel members, the court looked to the State for a race-neutral explanation. The prosecutor explained he struck Jones because: Jones had been self-employed all his life as an artist who sculpted and welded, thus being removed from mainstream society; he refused to reveal his religious preference on the juror information card; he wore earrings in both ears; he volunteered during voir dire examination that he did not believe in the death penalty; and he chuckled when the prosecutor asked another venireperson about potential police misconduct, leading the prosecutor to believe Jones might have been the subject of police misconduct in the past.

Lee attempted to show the State's explanations were pretext by arguing: the State did not strike another male venireperson who wore one earring; the State did not strike four other venirepersons who stated they had "no religious preference"; the State did not strike a panel member who worked in oriental rug restoration, an "art," according to Lee; the record contained no evidence that Jones chuckled during the voir dire examination; the State questioned Jones more than other panel members; and Jones gave State-oriented answers to virtually all the prosecutor's questions.

■ We conclude the trial court did not err in overruling Lee's challenge. The trial judge is in the best position to ascertain the credibility of the prosecutor. *See Hernandez v. New York*, 500 U.S. 352, 364–65, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991). So long as the trial court's appraisal of the evidence is plausible, we will not disturb the court's decision. *See Jack v. State*, 867 S.W.2d 942, 944 (Tex.App.—Beaumont 1993, no pet.). The judge witnessed the prosecutor explain the reasons for his strikes and believed the prosecutor when he declared the strikes were not racially motivated.

■ Moreover, the prosecutor gave several plausible reasons for striking Jones, and Lee did not persuade the court the reasons were pretext. First, the prosecutor believed Jones's two earrings and occupation as a self-employed artist placed him outside mainstream society. This belief was not patently

unreasonable. A prosecutor may exercise peremptory strikes based on hunches and past experience, even if they are foolish, so long as they are not motivated by race. *See Keeton v. State*, 749 S.W.2d 861, 865 (Tex. Crim.App.1988). Although the record suggests one other male juror wore an earring and was not stricken by the State, the record does not suggest any other male jurors wore an earring in each ear. In any event, racial discrimination does not necessarily exist in every situation where one of the State's bases for striking a venireperson would technically apply to another venireperson whom the State found acceptable. *See Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App. 1992).

Lee relies on *Woods v. State*, 801 S.W.2d 932 (Tex.App.—Austin 1990, pet. ref'd), to support her assertion that a prosecutor may not rely on a stereotype to strike a juror without showing the juror actually fits the stereotype. In *Woods*, the State struck a potential juror for having a "punk rock haircut" that he associated with "liberalism, radicalism, and the drug culture." *See Woods*, 801 S.W.2d at 936. This Court held that the prosecutor's explanation was likely pretext. In *Woods*, (1) the prosecutor had stricken all eight of the African American jurors in the strike zone, (2) the prosecutor had not stricken a Caucasian juror who had an unusual haircut, and (3) the prosecutor had not elicited any other information from the potential juror to support the conclusion that the juror fit the stereotype. *Id.* In fact, the stricken juror worked in law enforcement, which supports the opposite conclusion. *Woods* is distinguishable from this case because overall, the record in *Woods* revealed a systematic exclusion of minority venirepersons and facts that contradicted the prosecutor's explanations.

■ The second plausible reason the State asserted was a belief that Jones might be biased against the State, despite that many of Jones's answers were favorable to the State. The prosecutor believed Jones had chuckled during a discussion of police misconduct. Furthermore, Jones volunteered without being asked that he did not believe in

the death penalty. These facts could reasonably support the prosecutor's suspicion of bias, leading the trial court to believe the prosecutor's beliefs were genuine. Lee argues Jones's opinion about the death penalty was irrelevant because the State elected not to seek the death penalty in this case. The characteristics a prosecutor finds offensive in a juror need not be related to the exact subject matter of the case. *See Purkett,* 514 U.S. at 768–69, 115 S.Ct. at 1771–72.

Third, we are not certain why the prosecutor was troubled by Jones's reluctance to reveal his religious preference. We note, however, that there is nothing in the record to reflect that any non-stricken panel member refused to reveal his or her religious preference. As Lee points out, four venirepersons revealed that they had *no* religious preference, but those responses are different from Jones's. Although the prosecutor's reasoning is not clear, the proffered explanation was race-neutral and was not effectively rebutted.

Fourth, Lee argues the State questioned Jones more than it questioned other panel members, revealing an intent to disqualify him. The record suggests that at least part of the reason the State had more dialogue with Mr. Jones was his confusion about some questions and his attempts to engage the prosecutor in conversation.

Finally, we note the State did not strike the other African American juror in the strike zone. This bolsters the prosecutor's statement that he did not strike Jones because of race. *See Jones v. State,* 845 S.W.2d 419, 422 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). There is very little in the record contradicting the prosecutor's explanations. For the above reasons, any one of which could overcome a *Batson* challenge, we are not left with a firm conviction that the trial court made a mistake. We overrule Lee's first two points of error.

### Venireperson Rojas

■ According to Lee, the State struck two of four Hispanic venirepersons, one of whom was Angie Rojas. When the court looked to the State for a race-neutral explanation, the prosecutor stated he struck Rojas because she was too young. The court noted Rojas was the youngest member of the panel and overruled Lee's objection. Lee argues the trial court erred because the State failed to show Rojas's young age caused her to be biased against the State. Young age has been held to be a race-neutral explanation for striking a juror, without any proof that the juror is biased against the State. *E.g., Roy v. State,* 891 S.W.2d 315, 325 (Tex.App.—Fort Worth 1994, no pet.); *Barnes v. State,* 855 S.W.2d 173, 174 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *see also Jack,* 867 S.W.2d at 947. We overrule Lee's third and fourth points of error.

### Venireperson Gaipo

■ Lee challenged the State's exercise of a peremptory strike against Luiz Gaipo, another allegedly Hispanic venireperson. When the court looked to the State for a reason, the prosecutor explained he struck Gaipo because he had long hair and a goatee and looked "nonconforming." Lee pointed out in response that the State did not strike another panel member who had long hair. Lee also argued the State merely assumed without investigating that Gaipo was "nonconforming." The State asked Gaipo only one question and Gaipo's answer was favorable to the State. Lee again cites *Woods* for support.

We first note that the other panel member who had long hair did not also have a goatee. Furthermore, the United States Supreme Court has held that having long unkempt hair and a goatee beard is a race-neutral reason to strike a juror. *See Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771–72. Finally, *Woods* is distinguishable for the reasons discussed above. We overrule Lee's fifth and sixth points of error.

### CONCLUSION

We have held that the trial court did not err in concluding the prosecutor provided plausible race-neutral explanations for striking Jones, Rojas, and Gaipo and in concluding Lee failed to prove the explanations were mere pretext. Accordingly, we affirm the judgment of conviction.