**Hermalando Ulloa LOPEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 390–97.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 29, 1997.

Christine Byrd Webb, Burnet, for appellant.

Matthew Paul, State's Atty., Austin, for State.

McCORMICK, Presiding Judge, dissenting to Refusal of State's Petition for Discretionary Review.

This is yet another case in which a legally and factually guilty and fairly tried defendant's criminal conviction has been reversed on appeal for *Batson* error. See *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio*, 499 U.S. 400, 425–27, 429–31, 111 S.Ct. 1364, 1379, 1381, 113 L.Ed.2d 411 (1991) (Scalia, J., dissenting) (*Batson* entitles the guilty to relief even though the error does not affect their right to a fair trial). The Court of Appeals essentially decided, as a matter of federal constitutional equal protection jurisprudence, that it was "clearly erroneous" for the trial court to have decided the prosecutor rebutted a "presumption" that the prosecutor was a racist who engaged in purposeful and invidious racial discrimination of the worst kind by peremptorily striking the only black veniremember on the jury panel.

The State has filed a petition for discretionary review claiming among other things that the Court of Appeals failed to follow controlling United States Supreme Court precedent. This Court has decided not to exercise its discretion to review the decision of the Court of Appeals. I believe we should exercise our discretion to review this decision for several reasons.

One reason we should grant discretionary review in this case is to acknowledge that some of this Court's earlier *Batson* jurisprudence is clearly inconsistent with subsequent United States Supreme Court federal constitutional jurisprudence in this area, in particular the United States Supreme Court's decision in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It has been well-settled for a long time that when state courts are applying federal constitutional law, they *must* follow United States Supreme Court federal constitutional precedents. See United States Constitution, Article VI. However, the intermediate appellate courts in this state generally follow this Court's federal constitutional precedents even when they are wrong. But see *id.* Because of this, we should overrule our fed-

---

eral constitutional precedents that have been rendered obsolete by subsequent United States Supreme Court federal constitutional precedents and bring our precedents in line with current United States Supreme Court authority. See *id.* Texas' intermediate appellate courts should not be put in the position of having to decide whether they will follow this Court's federal constitutional precedents that are no longer good law in light of subsequent United States Supreme Court authority.[1]

In this case the prosecutor explained he peremptorily struck the veniremember based "on information provided by law enforcement officers who commented that this panel member would not make a good juror." Relying on this Court's opinion in *Williams v. State,* the Court of Appeals decided the prosecutor's explanation for the strike had to be "clear and reasonably specific" and had to contain "legitimate reasons" related to the case being tried. *Williams v. State,* 804 S.W.2d 95, 106 (Tex.Cr.App.), cert. denied, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). Relying on this Court's opinion in *Keeton v. State,* the Court of Appeals decided the prosecution failed at the second step of the *Batson* "three-step *danse macabre* "[2] to meet its burden of providing a race-neutral reason for the strike primarily because the prosecution did not present any evidence that rebutted a "presumption" of invidious discrimination. See *Keeton v. State,* 749 S.W.2d 861, 867–68 (Tex.Cr.App. 1988).[3] The Court of Appeals noted the record was silent on why law enforcement officers believed the veniremember would not make a good juror, and it then went on to hold the trial court's "implied conclusion that the State's peremptory challenge was exercised for race-neutral reasons is clearly erroneous because it is not supported by the record."

Contrary to what this Court said in *Williams, Purkett* makes clear that the second step of the *"Batson* process" does not require a "clear and reasonably specific" explanation containing "legitimate reasons" related to the case being tried. See *Purkett,* 514 U.S. at 767–70, 115 S.Ct. at 1770–72, 131 L.Ed.2d at 839–40 (second step of the *Batson* inquiry does not demand an explanation "that is persuasive or even plausible"). Under *Purkett,* the second step of the *"Batson* process" requires only a facially race-neutral explanation, even one that is "silly or superstitious" satisfies this second step of the *"Batson* process." See *Purkett,* 514 U.S. at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839 (the issue at the second step of the *Batson* inquiry is the facial validity of the prosecutor's explanation, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral). This Court's decision in *Williams* and others like it need to be overruled in light of *Purkett.* The Court of Appeals' decision that the prosecution failed at the second step of the *"Batson* process" to meet its "burden of producing" a race-neutral explanation also is inconsistent with *Purkett.*

In addition to this, many of this Court's decisions suggest that once a defendant establishes a "prima facie case of racial discrimination" in step one of the *"Batson* process," there is a "presumption" of racial discrimination and the "burden of proof" shifts to the prosecution to offer a race-neutral explanation in step two of this process. See, e.g., *Lewis v. State,* 815 S.W.2d 560, 563–64 (Tex.Cr.App.1991), cert.denied, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992) (when neutral explanations are offered it then becomes the defendant's burden to persuade the trial court that such challenges were racially motivated); *Keeton,* 749 S.W.2d at 867–68 (once a step one prima facie case is established, there is

---

1. The decision for the intermediate appellate courts to make seems clear under Article VI of the United States Constitution.

2. See *Casarez v. State,* 913 S.W.2d 468, 489 (Tex. Cr.App.1994) (McCormick, P.J., dissenting) (op. on original subm'n).

3. *Williams* and *Keeton* as well as the other decisions discussed in this opinion were decided as a matter of federal constitutional law, not as a matter of state law. When interpreting and applying federal constitutional law, we are not at liberty to disregard controlling United States Supreme Court authority just because some of us may not agree with it and even if doing so is more protective of criminal defendants.

a "presumption" of discrimination and the prosecution then has the "burden" of articulating a "clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried").[4] Cases like *Keeton* and *Lewis* also are inconsistent with *Purkett* because *Purkett* makes clear that the "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the opponent of the strike." *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839.

Establishing a step one prima facie case is not synonymous with establishing a "presumption" or a shifting of the "burden of proof." See *Purkett*, at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839; see also Tex.Pen. Cd., Section 2.05 (effect of establishing a "presumption"); but see *Lewis*, 815 S.W.2d at 563–64; *Keeton*, 749 S.W.2d at 867–68. A prima facie case simply means there is sufficient evidence that *if believed* by the factfinder will support a particular finding. The opponent of the strike with the burden of proof generally carries the risk of nonpersuasion [5] and even though the opponent of the strike establishes a prima facie case in step one, the trial court can still decide in step three that the opponent of the strike did not carry his burden of proving purposeful discrimination. See *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839 (in step three the trial court decides whether the opponent of the strike has carried his burden of proving purposeful discrimination).

When cases like *Lewis* and *Keeton* talk about "presumptions" and shifting of the "burden of proof," they effectively prevent the trial court from deciding in step three whether the opponent of the strike proved "purposeful discrimination." But see *Purkett*, at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839. This Court's decisions in *Williams* and *Keeton* and others like them also need to be overruled in light of *Purkett*.

I also would grant discretionary review in this case to emphasize that the applicable "clearly erroneous" standard of appellate review to a trial court's ruling on a *Batson* claim is a highly deferential standard. See *Hernandez v. New York*, 500 U.S. 352, 362–66, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991). Under a proper application of this standard, the appellate courts in this state should not reverse a trial court's ruling on a *Batson* claim except under the most egregious of circumstances. See *id.* This is because the trial court's ultimate ruling on a Batson claim largely turns on evaluation of credibility and demeanor which "lies peculiarly within a trial judge's province." See *id.* Trial courts are in the best position to make the call on a *Batson* claim. See *Whitsey v. State*, 796 S.W.2d 707, 741–49 (Tex.Cr. App.1989) (op. on reh'g) (McCormick, P.J., dissenting) (trial courts play the primary role in resolving *Batson* claims).

Finally, there is no evidence in this record of "purposeful discrimination." This record contains a facially race-neutral explanation for the prosecution's peremptory strike. As the Court of Appeals noted, the record is otherwise silent as to the reasons for the strike. A silent record usually is fatal to the party whose burden it is to establish reversible error on appeal. See Tex.R.App.Proc. 50(d) (burden is on appellant to present a sufficient record showing error requiring reversal). On this record and under the applicable deferential standard of review, appellant has not carried his burden of showing the trial court's ruling on his *Batson* claim was "clearly erroneous."

Because this Court's earlier federal constitutional precedents are so clearly inconsis-

---

4. In this case the Court of Appeals relied on *Keeton* to decide the prosecution did not "present any evidence [in step two] that could be used to overcome the presumption of discrimination and show neutrality," and the Court of Appeals relied on *Lewis* to decide "once the State offers a neutral explanation [step two], the *burden shifts back to the defendant* [step three] to persuade the trial court that the State's purported reasons for its peremptory strikes are mere pretext and are in fact racially motivated." (Emphasis Supplied).

5. Cf. *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839 ("to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious") (emphasis in original).

tent with current federal constitutional law, I urge the intermediate appellate courts to follow *Purkett* when reviewing a trial court's ruling on a *Batson* claim because that is their clear duty under Article VI of the United States Constitution. I dissent to the refusal of the State's petition for discretionary review.

MANSFIELD and KELLER, JJ., join this dissent.