TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00443-CR






Joaquin Tarrazas Mandujano, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL

DISTRICT

NO. 93-684-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






 A jury found appellant guilty of delivery of marihuana and the trial court sentenced him to
forty-four years' confinement. (1)
 Appellant's sole point of error is a Batson challenge. We must decide
whether the prosecutor offered a race-neutral basis for challenging a Hispanic potential juror, and, if so,
whether the trial court's decision to accept the prosecutor's explanation should be sustained. We find the
trial court's ruling was not clearly erroneous and will affirm the conviction.


Trial Procedures and Standard of Review for Batson Challenges

 Appellant contends the trial court erred by denying his Batson challenge to the State's
peremptory strike of a Hispanic member of the venire panel. Appellant argues that the prosecutor used
this strike in a racially discriminatory manner to exclude the veniremember from service on the jury because
of his race. Excluding a person from jury service because of race violates the Equal Protection clause of
the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV; Batson v.
Kentucky, 476 U.S. 79 (1986). See Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989) (statute
essentially codifies Batson standard).

 The analysis used to test a Batson challenge consists of three steps. First, the defendant
must establish a prima facie showing of discrimination by the State against an eligible veniremember. To
make such a case, the defendant must show that relevant circumstances raise an inference that the State
made a race-based strike. Only minimal evidence is needed to support a rational inference. The burden
of establishing a prima facie case is not onerous. Second, if a prima facie case is made, the State then has
the burden to come forward with a race-neutral reason for the strike. The prosecutor's explanation must
be clear and reasonably specific and must contain legitimate reasons for the strike related to the case being
tried at the moment. Finally, once the State offers a race-neutral explanation, the burden shifts back to the
defendant to persuade the trial court that the State's purported reasons for its peremptory strike are mere
pretext and are in fact racially motivated. Lopez v. State, 940 S.W.2d 388, 389-90 (Tex. App.--Austin),
pet. ref'd, 954 S.W.2d 774 (Tex. Crim. App. 1997) (McCormick, P.J., dissenting to refusal of State's
petition); see also Purkett v. Elem, 514 U.S. 765 (1995); Hernandez v. New York, 500 U.S. 352
(1991).

 On appeal of a Batson challenge, this Court must apply a "clear error" standard of review. 
Lopez, 940 S.W.2d at 390 (citing Hernandez, 500 U.S. at 364-65). In applying this standard, we must
review all of the evidence in the light most favorable to the district court's ruling and then determine if the
ruling was clearly erroneous. If, after reviewing all the evidence, we cannot say that the trial court's ruling
was clearly erroneous, we must uphold the ruling even if this Court would have weighed the evidence
differently had we been sitting as the trier of fact. Lopez, 940 S.W.2d at 390. (2) For us to conclude that
the trial court's decision was clearly erroneous, we must be left with a "definite and firm conviction that a
mistake has been committed." Vargas v. State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).

 Great deference to the trial court's ruling is especially appropriate in the review of a Batson
challenge because the credibility of the prosecutor's explanation is the heart of the matter and the trial court
is in the best position to make that judgment.


 Deference to the trial court findings on the issue of discriminatory intent makes
particular sense in this context because, as we noted in Batson, the finding "largely will turn
on evaluation of credibility." In the typical peremptory challenge inquiry, the decisive
question will be whether counsel's race-neutral explanation for a peremptory challenge
should be believed. There will seldom be much evidence on that issue, and the best
evidence often will be the demeanor of the attorney who exercises the challenge. As with
the state of mind of a juror, evaluation of the prosecutor's state of mind based on
demeanor and credibility lies "peculiarly within a trial judge's province."



Hernandez, 500 U.S. at 365 (citations omitted)(plurality opinion).

Discussion

 Mandujano and his two codefendants are Hispanic. The case was tried with the assistance
of an interpreter. At the conclusion of voir dire, the State exercised one of its peremptory challenges to
excuse a male veniremember of Hispanic origin. It is this strike that appellant contends was racially
motivated.

 Appellant argued in the trial court that the State used two of its peremptory challenges to
remove a Hispanic man and woman and that these two were the only Hispanics near the top of the panel
list and thus likely to be chosen to serve. At the hearing on appellant's challenge, the State offered its
explanations for these strikes, and the trial court ruled adversely to appellant. The record does not disclose
whether the trial court ever expressly determined that appellant had met his burden to make a prima facie
case of discrimination. However, once a prosecutor articulates the reasons for a peremptory challenge and
the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether
the defendant made a prima facie case becomes moot. Rhodes v. State, 934 S.W.2d 113,124 (Tex.
Crim. App. 1996), citing Wheatfall v. State, 882 S.W.2d 829, 835 (Tex. Crim. App. 1994). Appellant
only brings forward on this appeal his challenge to the Hispanic male veniremember.

 The State's first explanation of why it struck the Hispanic male was that he was the only
veniremember to leave important papers in the courtroom when everyone went to lunch. The papers
included the form he would have to use to get paid for jury duty and his jury questionnaire. The second
reason the State offered was an answer he gave on the jury questionnaire. In response to the question
whether he wanted to serve on the jury, he answered that he did want to serve because it would help him
in case he were ever called to be on a jury again. The prosecutor explained that he considered that
response illogical and nonsensical. Finally, the State explained that the combination of the first two reasons
left the State with doubts about the juror's level of intelligence and his ability to understand the State's case.

 Appellant's answer to the State's explanation was to discount the importance of leaving
papers in the courtroom and simply to dispute that the answer on the questionnaire about why he wanted
to serve was illogical or nonsensical. Appellant offered into evidence the questionnaires of two other venire
members who were not struck by the State as being no more logical than the response of the Hispanic man
the State did strike. One answered that he did not want to serve because of work constraints, but could
serve; the other did not answer the question at all. After the hearing and argument, the trial court ruled that
it did not believe that purposeful discrimination by the State had been demonstrated in the use of its strikes
and denied appellant's challenge.

 In our review, we begin by looking at the second step in the three-step process explained
above, the State's articulation of a race-neutral explanation for striking the venire member. In evaluating
the race-neutrality of a prosecutor's explanation, an appellate court must determine whether, assuming the
reasons given are true, the use of the peremptory challenge violated the Equal Protection Clause as a matter
of law. Hernandez, 500 U.S. at 359.

 A neutral explanation means an explanation based on something other than the race of the
juror. Id. at 360. At this step, the issue is the facial validity of the prosecutor's explanation. "Unless a
discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed neutral." 
Id. "The second step of this process does not demand an explanation that is persuasive, or even plausible." 
Purkett v. Elem, 514 U.S. 765, 767-68 (1995).

 The prosecutor's intent is crucial, not the result of his action. "Equal protection analysis
turns on the intended consequences of government classifications. Unless the government actor adopted
a criterion with the intent of causing the impact asserted, that impact itself does not violate the principal of
race neutrality." Hernandez, 500 U.S. at 362. In Batson, 476 U.S. at 98, the Court said that the
proponent of a strike that is challenged must provide a clear and reasonably specific explanation of his
legitimate reasons for exercising the strike. In Purkett, the Court explained this requirement:


 This warning was meant to refute the notion that a prosecutor could satisfy his
burden of production by merely denying that he had a discriminatory motive or by merely
affirming his good faith. What is meant by a "legitimate reason" is not a reason that
makes sense, but a reason that does not deny equal protection.



Purkett, 514 U.S. at 768 (emphasis added).

 The Court pointed out that the focus of the inquiry is not upon the reasonableness of the 
asserted non-racial motive, but on the genuineness of the motive. Id. See Morris v. State, 940 S.W.2d
610, 612 (Tex. Crim. App. 1996) ("A ruling on a Batson objection is a credibility determination.").

 At the second step of the analysis, the inquiry is whether a reasonably specific and facially
neutral explanation has been given. If the explanation is not a general denial and is not racially based, the
answer can be silly or superstitious or fantastic or implausible and need not be even minimally persuasive. 
See Purkett, 514 U.S. at 768.

 After the prosecutor has provided an adequate explanation as described above, then the
third step shifts the focus back to the opponent of the strike to persuade the trial court that the race-neutral
explanation is merely a pretext for purposeful discrimination. See Batson, 476 U.S. at 98; Hernandez, 500
U.S. at 359 (plurality opinion); Purkett, 514 U.S. at 768. It is at this point that the persuasiveness of the
prosecutor's justification becomes relevant. "At that stage, implausible or fantastic justifications may (and
probably will) be found to be pretexts for purposeful discrimination." Purkett, 514 U.S. at 768.

 In this instance, appellant's response to the prosecutor's explanation was that he did not
believe the prosecutor. He thought "leaving papers in the courtroom" was not important; he introduced
other potential jurors' answers to the questionnaire that were no less irrational, but did not cause the
veniremembers to be struck. Appellant made the assertion that the State's reasons were merely a pretext
for an impermissible strike. The trial court determined that appellant had not demonstrated purposeful
discrimination and denied the Batson claim. We cannot say that the trial court clearly erred by declining
to find that the State struck the man because of his ethnicity. Appellant's burden in a case such as this
one is substantial and often there will be little evidence to show purposeful discrimination. The system for
determining a challenge places the burden on the opponent of a peremptory strike. While difficult, it is not
impossible for a defendant to successfully challenge a strike on the basis of Batson. See Lopez, 940
S.W.2d 388. Upon a minimal prima facie showing of discrimination, the State must disclose its reason for
the strike. A general denial of discriminatory intent is not sufficient. "I didn't like the way he looked" is not
sufficiently specific, while "I didn't like the way he looked because he had long, unkempt hair and wore
both a mustache and a goatee" is likely to be a sufficiently valid race-neutral reason, at least at the second
step. See Purkett, at 767-70; Lee v. State, 949 S.W.2d 848,951 (Tex. App.--Austin 1997, pet. ref'd)
(sufficient where one man had two earrings, another had both long hair and a goatee). Finally, the trial
court must determine the credibility of the prosecutor's explanation. In the instant case, the trial court
obviously did not believe the State was motivated by racial discrimination, even though the reasons given
might seem slight and flimsy.


Conclusion

 The State provided race-neutral explanations for the challenged strike. Appellant only
asserted that the State's reasons were not believable. The other juror questionnaires were not persuasive
evidence that the prosecutor's stated explanation for the strike was pretextual. Appellant did not introduce
any evidence or raise an inference that the State had a race or ethnicity-based reason for the strike. 
Because the trial court's ruling was not clearly erroneous, we affirm the judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: April 9, 1998

Publish

1.   Appellant delivered 10 lbs. of marihuana on October 29, 1993. The law at the time of the offense
made delivery of more than five pounds but less than 50 pounds marihuana a first degree felony. See
Health & Safety Code, 71st Leg., ch. 678, § 1, § 481.120, 1989 Tex. Gen. Laws 2230, 2938 (Tex.
Health & Safety Code § 481.120(a), (b)(5), since amended). Marihuana delivery of more than 5 but less
than 50 lbs. is now a second degree felony. Tex. Health & Safety Code Ann. § 481.120(a), (b)(4) (West
Supp. 1998).

2.   Presiding Judge McCormick's dissent to the refusal of the State's petition for discretionary review
in Lopez was partially based on his view that the Court of Criminal Appeals should "emphasize that the
applicable 'clearly erroneous' standard of appellate review to a trial court's ruling on a Batson claim is a
highly deferential standard. See Hernandez v. New York, 500 U.S. 352, 362-66, 111 S. Ct. 1859, 1868-69, 114 L. Ed. 2d 395 (1991)." Lopez, 954 S.W.2d at 776. 


ation is not a general denial and is not racially based, the
answer can be silly or superstitious or fantastic or implausible and need not be even minimally persuasive. 
See Purkett, 514 U.S. at 768.

 After the prosecutor has provided an adequate explanation as described above, then the
third step shifts the focus back to the opponent of the strike to persuade the trial court that the race-neutral
explanation is merely a pretext for purposeful discrimination. See Batson, 476 U.S. at 98; Hernandez, 500
U.S. at 359 (plurality opinion); Purkett, 514 U.S. at 768. It is at this point that the persuasiveness of the
prosecutor's justification becomes relevant. "At that stage, implausible or fantastic justifications may (and
probably will) be found to be pretexts for purposeful discrimination." Purkett, 514 U.S. at 768.

 In this instance, appellant's response to the prosecutor's explanation was that he did not
believe the prosecutor. He thought "leaving papers in the courtroom" was not important; he introduced
other potential jurors' answers to the questionnaire that were no less irrational, but did not cause the
veniremembers to be struck. Appellant made the assertion that the State's reasons were merely a pretext
for an impermissible strike. The trial court determined that appellant had not demonstrated purposeful
discrimination and denied the Batson claim. We cannot say that the trial court clearly erred by declining
to find that the State struck the man because of his ethnicity. Appellant's burden in a case such as this
one is substantial and often there will be little evidence to show purposeful discrimination. The system for
determining a challenge places the burden on the opponent of a peremptory strike. While difficult, it is not
impossible for a defendant to successfully challenge a strike on the basis of Batson. See Lopez, 940
S.W.2d 388. Upon a minimal prima facie showing of discrimination, the State must disclose its reason for
the strike. A general denial of discriminatory intent is not sufficient. "I didn't like the way he looked" is not
sufficiently specific, while "I didn't like the way he looked because he had long, unkempt hair and wore
both a mustache and a goatee" is likely to be a sufficiently valid race-neutral reason, at least at the second
step. See Purkett, at 767-70; Lee v. State, 949 S.W.2d 848,951 (Tex. App.--Austin 1997, pet. ref'd)
(sufficient where one man had two earrings, another had both long hair and a goatee). Finally, the trial
court must determine the credibility of the prosecutor's explanation. In the instant case, the trial court
obviously did not believe the State was motivated by racial discrimination, even though the reasons given
might seem slight and flimsy.


Conclusion

 The State provided race-neutral explanations for the challenged strike. Appellant only
asserted