# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-00-00201-CR

**Robert Rosales, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
### NO. 99-708-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

Appellant Robert Rosales appeals a judgment based upon a jury determination finding him guilty of committing the offense of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2000). The same jury assessed punishment at twenty years' confinement in the Texas Department of Criminal Justice Institutional Division and a fine of $5,000.00.[1] Appellant appeals by two points of error, both based on *Batson* challenges. *See Batson v. Kentucky,* 476 U.S. 79 (1986). We must decide whether the State offered a race-neutral basis for exercising peremptory challenges to strike an African-American and a Hispanic as potential jurors and, if so, whether the district court's decision to accept the State's explanation should be sustained. Because we hold that the district

---

[1] On July 22, 1999, appellant was found to have in his possession 3.88 grams of cocaine and drug paraphernalia.

court's ruling was not clearly erroneous, we will overrule appellant's points of error and affirm the judgment.

**Trial Procedures and Standard of Review for *Batson* Objections**

Appellant contends the district court erred by denying his *Batson* objections to the State's peremptory challenges of an African-American and a Hispanic member of the venire panel. Appellant argues that the State used the strikes in a racially discriminatory manner to exclude the venire members from service on the jury because of race. Excluding a person from jury service because of race violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV; *Batson*, 476 U.S. at 88; *Mandujano v. State*, 966 S.W.2d 816, 818 (Tex. App.–Austin 1998, pet. ref'd).

A *Batson* objection must satisfy the three-pronged test established in *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). *See also Mandujano*, 966 S.W.2d at 818. First, the defendant must establish a *prima facie* showing of discrimination by the State against an eligible venire member. *Mandujano*, 966 S.W.2d at 818. To make such a case, the defendant must show that relevant circumstances raise an inference that the State made a race-based strike. *Id.* Only minimal evidence is needed to support a rational inference. *Id.* The burden of establishing a *prima facie* case is not onerous. *Id.* Second, if a *prima facie* case is made, the State then has the burden to come forward with a race-neutral reason for the strike. *Id.* The State's explanation must be clear and reasonably specific and must contain legitimate reasons for the strike related to the case being tried at the moment. *Id.* Finally, once the State offers a race-neutral explanation, the burden shifts back to the defendant to persuade the trial court that the State's stated reasons

2

for its peremptory challenges are mere pretext and the strikes are in fact racially motivated. *Lopez v. State*, 940 S.W.2d 388, 389-90 (Tex. App.–Austin 1997, pet. ref'd); *see also Purkett*, 514 U.S. at 768; *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

On appeal of a trial-court ruling following a *Batson* inquiry, the appellate court applies a "clear error" standard of review. *Lopez*, 940 S.W.2d at 390 (citing *Hernandez*, 500 U.S. at 364-65). In applying this standard, the court must review all of the evidence in the light most favorable to the trial court's ruling. *Mandujano*, 966 S.W.2d at 819. If, after reviewing all the evidence, the appellate court cannot say that the trial court's ruling was clearly erroneous, it must uphold the ruling even if the reviewing court would have weighed the evidence differently had it been sitting as the trier of fact. *Lopez*, 940 S.W.2d at 390.[2] To conclude that the trial court's decision was clearly erroneous, the appellate court must be left with a "definite and firm conviction that a mistake has been committed." *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).

Great deference to the trial court's ruling is especially appropriate in the review of a *Batson* ruling because the credibility of the prosecutor's explanation is the heart of the matter and because the trial court is in the best position to make that judgment. *Mandujano*, 966 S.W.2d at 819.

---

[2] Presiding Judge McCormick dissented from the refusal of the State's petition for discretionary review in *Lopez*, partially based on his view that the court of criminal appeals should "emphasize that the applicable 'clearly erroneous' standard of appellate review to a trial court's ruling on a *Batson* claim is a highly deferential standard." *Lopez v. State,* 940 S.W.2d 388 (Tex. App.–Austin), *pet. ref'd*, 954 S.W.2d 774, 776 (Tex. Crim. App. 1997) (McCormick, P.J., dissenting) (citing *Hernandez v. New York*, 500 U.S. 352, 362-66 (1991)).

Deference to the trial court's findings on the issue of discriminatory intent makes particular sense in this context because the finding "largely will turn on evaluation of credibility." *Batson*, 476 U.S. at 98 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575-76 (1985)). In the typical peremptory-challenge inquiry, the decisive question will be whether the prosecutor's race-neutral explanation for a peremptory challenge should be believed. *Mandujano*, 966 S.W.2d at 819. There will seldom be much evidence on the issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. *Id.* As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." *Hernandez*, 500 U.S. at 365.

**Discussion and Conclusion**

The appellant, Rosales, is Hispanic.[3] At the conclusion of *voir dire*, the State exercised peremptory challenges to excuse a male venire member of African-American origin and a male venire member of Hispanic origin. Appellant contends that these strikes were racially motivated.

We will presume without deciding that appellant established a prima facie showing of discrimination and address the State's articulation of a race-neutral explanation for striking the venire members. *See Mandujano*, 966 S.W.2d at 818. In evaluating the race neutrality of the State's explanation, an appellate court must determine whether, assuming the reasons given are

---

[3] It is unnecessary for a defendant to share the same race as the excluded juror in order to assert a *Batson* challenge. *Powers v. Ohio*, 499 U.S. 400, 402 (1991).

4

true, the use of the peremptory challenge violated the Equal Protection Clause as a matter of law. *Hernandez*, 500 U.S. at 359.

A race-neutral explanation means an explanation based on something other than the race of the juror. *Hernandez*, 500 U.S. at 360. The issue is the facial validity of the State's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed neutral." *Id.* "The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett*, 514 U.S. at 767-68.

The State's intent, not the result of its action, is crucial. "Equal protection analysis turns on the intended consequences of government classifications. Unless the government actor adopted a criterion with the intent of causing the impact asserted, that impact itself does not violate the principal of race neutrality." *Hernandez*, 500 U.S. at 362. In *Batson*, the Supreme Court observed that the proponent of a strike that is challenged must provide a clear and reasonably specific explanation of the legitimate reasons for exercising the strike. *Batson*, 476 U.S. at 98. In *Purkett*, the Supreme Court explained this requirement:

> This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What is meant by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.

*Purkett*, 514 U.S. at 769. The Court pointed out that the focus of the inquiry is not upon the reasonableness of the asserted non-racial motive, but on the genuineness of the motive. *Id.*; *see also Morris v. State*, 940 S.W.2d 610, 612 (Tex. Crim. App. 1996) ("A ruling on a *Batson* objection is a credibility determination."). If the explanation is not a general denial and is not

5

racially based, the answer can be silly or superstitious or fantastic or implausible and need not be even minimally persuasive. *See Purkett*, 514 U.S. at 768.

Appellant first argued in the district court that the State used three of its peremptory challenges to remove an African-American man, a Hispanic man, and a woman with a Hispanic surname. Second, appellant argued that only one minority within the strike range for the State was not struck and remained on the jury. Appellant finally argued that three-fourths of the potential minority members were removed by the State's peremptory strikes. Appellant asserts on appeal only his objections to the State's use of peremptory challenges to the African-American and the Hispanic male venire members.

The State explained that it struck the African-American because he had a thick accent and was difficult to understand. Appellant, in response, discounted the importance of understanding his speech and focused on the venire member's many years of higher education in English in the United States. Appellant presented the potential juror's questionnaire to illustrate his comprehension of and education in the English language. Appellant did not address the difficulty others might have had understanding the potential juror's accent. After the hearing and argument, the district court noted that the court, too, had some difficulty understanding the venire member and subsequently ruled that he did not believe that purposeful discrimination by the State had been demonstrated in the use of its strikes.

The State explained that it struck the Hispanic because that the prosecutor had reason to believe that the prospective juror "had a DWI" and that the prospective juror had family

members who had drug problems.[4] Appellant's response to the State's DWI assertion was that he was not privy to that information and no questions were asked of the potential juror to clarify whether he in fact had a DWI. Concerning the prospective juror's family members' drug problems, appellant asserted that a majority of the jurors responded that they had family members or friends who had drug and alcohol problems. However, no other juror mentioned having a DWI. Additionally, most of the jurors who had family or friends with substance-abuse problems identified the problem as that of alcohol, not drugs. There was no evidence that any other potential juror had both a DWI and family or friends with substance-abuse problems. However, no other juror mentioned actually having a DWI. Additionally, most of the jurors who had family or friends with substance-abuse problems identified the problem as that of alcohol, not drugs. The court could consider that appellant was on trial for an illegal substance offense; there was no evidence that any other potential juror had both a DWI and family or friends with substance-abuse problems. After the hearing and argument, the district court observed that the potential juror had approached the court at the general qualification of prospective jurors and advised the court of his DWI.

Appellant asserted that the State's reasons were merely pretexts for impermissible strikes. The district court determines the credibility of the State's explanation. *Mandujano*, 966 S.W.2d at 821. The district court determined that appellant had not demonstrated purposeful discrimination and denied the *Batson* claims. Appellant's burden in a case such as this is substantial, and often there will be little evidence to show purposeful discrimination. *Mandujano*,

---

[4] The record is unclear whether the DWI was pending or had been resolved.

966 S.W.2d at 821. The system for determining a challenge places the burden on the opponent of a peremptory strike. *Id.* While difficult, it is not impossible for a defendant to successfully challenge a strike on the basis of *Batson*. *See Lopez*, 940 S.W.2d 388. Upon a minimal *prima facie* showing of discrimination, the State must disclose its reason for the strike. *Mandujano*, 966 S.W.2d at 821. A general denial of discriminatory intent is not sufficient. *Id.* "I didn't like the way he looked" is not sufficiently specific, while "I didn't like the way he looked because he had long, unkempt hair and wore both a mustache and a goatee" is likely to be a sufficiently valid race-neutral reason. *Purkett*, 514 U.S. at 767-70; *Lee v. State*, 949 S.W.2d 848, 851 (Tex. App.–Austin 1997, pet. ref'd) (holding explanation sufficient where one man had two earrings, another had both long hair and a goatee). Here, the district court was not persuaded that the State was motivated by racial discrimination. We cannot say that the district court clearly erred by declining to find that the State struck the venire members because of ethnicity.

We overrule appellant's points of error and affirm the district court's judgment.

_____

Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed:   November 16, 2000

Do Not Publish