# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00618-CR

**Jason Levar Gibson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 3032574, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Jason Levar Gibson guilty of aggravated robbery and assessed sentence at forty-two years in prison. Appellant contends that the trial court erred by permitting the State's racially motivated strike of a jury panelist, by failing to excuse for cause certain jurors and denying appellant's motion for additional peremptory strikes, by overruling his objection to the admission of a suggestive photo array, by allowing hearsay, and by allowing conviction on uncorroborated accomplice witness testimony. We affirm the judgment.

Victim Mark Hesprich left the Landing Strip, a strip club, with an entertainer acquaintance, Michelle West, and two unfamiliar men he had approached about acquiring cocaine. The four took two cars to Hesprich's home. The foursome consumed both cocaine and champagne.

Eventually, the two men robbed Hesprich at gunpoint, shot him, and fled after Hesprich escaped and sought help from neighbors.

Police lifted fingerprints from a bottle and a glass at Hesprich's house. They also took bullets lodged in the house's walls and obtained descriptions of the assailants from Hesprich and West. Hesprich described one suspect as a black male, approximately 6'3, 265 pounds, with a heavy build. He described the other as a black male, approximately 6'5, 210 pounds, with a thin build, short black hair, and a few gold teeth. Hesprich testified that he recalled the heavier man wearing a red jacket. West described one of the attackers as a black male, 25 to 30 years old, heavy build, short Afro, goatee, 6 foot, 230 pounds with a black and light blue jersey. The second suspect was described as 25 to 30 years old, thin build, short hair, 6 foot 2, 175 pounds with a red jersey and gold teeth. Appellant's attorney indicated at trial that appellant was 6'4 and weighed 240 or 250 pounds.

Employees at the Landing Strip were alerted to these descriptions. Seeing men who resembled the description of the assailants, the employees obtained the license number of the suspect's vehicle. Police arrested the car's owner, Hobert Robinson, who confessed and implicated appellant. Both Hesprich and West picked Robinson out of a photo array without hesitation. Hesprich chose appellant out of a second array without hesitation three days after the incident. West narrowed the choice to appellant and a second man, but was unable to positively identify one as an assailant.

A fingerprint expert testified that she identified one fingerprint from the champagne bottle as belonging to Robinson and three from the bottle belonging to appellant. The expert testified

2

that, pursuant to policy, she did not list in her report the points of comparison that matched between the latent fingerprints and appellant's fingerprints. She was not asked and did not explain what similarities persuaded her that the latent fingerprints were appellant's fingerprints.

The State charged appellant with two counts of aggravated robbery that were alternate theories of the same offense. Both involved robbery and exhibition of a firearm, but count one involved shooting Hesprich to effectuate the robbery while count two relied on placing Hesprich in fear of imminent bodily injury and death. The jury convicted appellant of the first count and later assessed sentence at forty-two years in prison.

Appellant raises five issues on appeal. He complains that the State improperly struck the only African-American within the "strike zone" and that the district court erred by denying his motion for additional peremptory strikes. Appellant also complains that the court overruled his objection to the admission of a suggestive photo array, admitted hearsay, and permitted a conviction based on uncorroborated accomplice witness testimony.

The State may not strike jury panelists in a purposefully and inappropriately discriminatory manner. Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989); *Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986). The *Batson* challenge analysis has three steps. First, the defendant must make a prima facie showing of relevant circumstances that raise an inference that the State made a race-based strike against an eligible panelist. *Mandujano v. State*, 966 S.W.2d 816, 818 (Tex. App.—Austin 1998, pet. ref'd). Next, the State must come forward with a race-neutral reason for the strike that is clear, reasonably specific, and contains legitimate reasons for the strike related to the case being tried. *Id*. If the State offers a race-neutral explanation, the burden returns to the

3

defendant to persuade the trial court that the State's purported reasons for its peremptory strike are mere pretext. *Id.* Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). The focus of appellant's issue is whether the State's explanation of its peremptory strike is pretext.

When defense counsel asked if any of the panelists believed that race made a difference in a trial, the challenged panelist said, "I do." He then stated as follows:

> I have pretty much grown up in East Austin and so when I listen to people's opinions about police officers, [they are] vastly different than mine. And I have been pulled over because I fitted so many descriptions of various individuals for situations. And so from my firsthand experiences, I've learned that officers don't always tell the truth, from my experience. And so they are the ones that initially get you engaged in the criminal justice system and it's based upon their abilities to make decisions. And once one gets in there, I think other people—their beliefs play a role in how they perceive the individual that's on trial and what decisions to make about them.

The State exercised one of its peremptory strikes on this panelist, who was number two in the jury array. He was the only African-American among the panelists in the strike zone—the subgroup of the full panel that includes all persons who would be struck peremptorily and those chosen to serve on the jury. (Two other African-American panelists were outside the strike zone.)

After appellant objected that this strike was racially motivated, the assistant district attorney said he struck the panelist

> because he indicated that he had a different view of police officers having grown up on the east side. And what else did he tell us? He also—there are some sort of personal things about him. He arrived late after the break. He was like 10 or 15 minutes later than everybody else. And he knows somebody or knew somebody that worked at the Landing Strip.

4

Defense counsel argued that striking the panelist because he grew up on the east side was "just another way of saying that we struck him because he's black." The assistant district attorney countered, "What he expressed to us was that he had a propensity to be more negative towards police officers than other jurors and that that was—and his words, I believe were—because where he grew up and experiences with police."

Although race underlay the panelist's response to defense counsel's question of whether race had an effect on trials, the prosecutor said he struck the panelist for his negative reaction to police officers. The panelist plainly stated his beliefs about the attitudes and actions of police officers and other participants in the criminal justice system. Appellant asserts that the panelist did not show bias and charges that one could conclude that "black males are automatically targeted veniremembers if they come from East Austin, that there should never be any blacks from East Austin because of their experiences, but especially no black males. . . . It was clearly the State's desire to imbue a police officer with instant credibility in the eyes of the jury and having a black juror would thwart that objective!" However, the record does not support these contentions. There is no showing that the State treated this panelist differently because of his race—for example, there is no showing that the State declined to strike a panelist of another race with similar attitudes toward police and the criminal justice system. Although the panelist's statements do not necessarily show bias against the State, no such showing is required for the exercise of peremptory strike. The State offered a permissible, race-neutral explanation that was not rebutted. This record presents no error. *See Purkett*, 514 U.S. at 768. We overrule point of error one.

Appellant complains that the district court erroneously denied his challenges for cause of certain jury panelists. These denials became harmful when the court denied his request for three additional peremptory strikes. On appeal, he asserts these denials forced him to accept two objectionable jurors—panelists 3 and 14.[1] The court of criminal appeals has outlined the means of showing harmful error in the denial of challenges for cause:

> Harm from the erroneous denial of a defense challenge for cause occurs (1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court erroneously failed to excuse for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant was denied a request for an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury.

*Escamilla v. State*, 143 S.W.3d 814, 821 (Tex. Crim. App. 2004).

Appellant challenged for cause panelists 1, 8, 9, 13, 19, 23, 25, 26, 31, 38, 39, 40, 45, and 51. The court struck panelists 8, 9, 13, 38, 45, and 51 for cause, and excused some panelists for other reasons. Panelists 39 and 40 were outside the strike zone. Appellant then exercised peremptory strikes on panelists 1, 6, 15, 19, 22, 23, 25, 26, 27, and 31. Having exhausted his peremptory strikes, appellant requested three more. The court denied the request. Appellant complained that he was forced to accept as jurors panelists 3 and 14. Appellant stated that panelist

---

[1] Appellant characterizes events differently in his brief. He contends that the court's denial of his challenges for cause of panelists 3 and 14 forced him to use peremptory strikes against panelists 19 and 23. The record does not show that he challenged panelists 3 or 14 for cause (nor does he explain why a denial of such challenges would *force* him to exercise peremptory strikes against *other* panelists). Appellant did not preserve the errors as articulated in his brief. *See* Tex. R. App. P. 33.1.

3 was objectionable because he had been a victim of a burglary and that he would have used a peremptory strike on panelist 14 for some unspecified reason.

Appellant has not demonstrated reversible error because he has not shown that the district court erroneously failed to excuse panelists for cause. *See Escamilla*, 143 S.W.3d at 821. In his brief, appellant does not state why any of the panelists he unsuccessfully challenged for cause and on whom he used peremptory strikes should have been struck for cause. Appellant asserts that panelist 3's history as a burglary victim made him objectionable, but appellant did not challenge him for cause at trial. At trial, when listing the panelists challenged for cause, appellant stated that he challenged the list of panelists for "[a] variety of things." When the panelists challenged for cause returned for questioning, the court asked whether they would assess the credibility of a police officer differently from any other witness. Only one panelist indicated that he would, and the court struck him for cause. Appellant's attorney said, "Judge, you understand that some of these other people I had other issues with, but I know you took notes. . . . I will just articulate them. I'd be happy to question them further if you want." He asked no further questions and made no more mention of the basis for any challenges for cause. The court then struck several panelists for cause and excused others, and denied appellant's request for additional peremptory strikes. Presented with no basis on which to evaluate these challenges for cause, we find no error in their denial. We overrule point of error two.

Appellant contends that the district court erred by denying his objection to the introduction of a suggestive photo array. He contends that the photo array was impermissibly suggestive because appellant was the only subject wearing any jewelry, and his necklace was heavy,

drawing even more attention. He points to evidence that Hesprich did not see him at the club or on the drive home, and that, once home, Hesprich was intoxicated on champagne and cocaine.

When challenging the admissibility of pretrial identifications, a defendant has the burden to show, by clear and convincing evidence based on the totality of the circumstances, that the pretrial identification procedure was impermissibly suggestive and that it created a substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 32-34 (Tex. Crim. App. 1995) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). Only if the pretrial identification procedure proves impermissibly suggestive do we examine whether it tainted the identification. *Id*. at 34 (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). Factors in assessing any improper effect on the identification include: (1) the witness's opportunity to view the criminal act, (2) the witness's degree of attention, (3) the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. *Id*. at 34-35.

Austin Police Detective Michelle Woodfin testified that she prepared and presented the array to be non-suggestive of the identity of the suspect. She said that the other photographs were chosen by computer based on her inputs of race, gender, and age range. She testified that another officer altered the other photos to equalize the size of the individual in the photos. Both the original photos and the array presented to Hesprich were admitted. Woodfin testified that the other members of the array were males of the same race with the same facial hair, facial characteristics, and hair color, all dressed in civilian clothes against a neutral background. She testified that others had some distinct shirts—one red, one with a large white emblem, one with the letters "AWAY" across it—and disagreed that the necklace made appellant stand out. She testified that, when

8

showing the array to Hesprich, she told him that she did not know if the suspect was included. She also testified that no other officer suggested which photo to choose.

Hesprich agreed that the photos were presented to him in a neutral manner. He disagreed that appellant's photo was suggestive. He testified that he did not notice appellant's necklace until defense counsel pointed it out. (The chain is tucked into appellant's t-shirt and is visible only on the sides of his neck.) Hesprich testified that he chose appellant based on his face. Hesprich testified that he had the opportunity to observe the men while they were in his kitchen, and particularly when appellant threatened him with a gun. He especially remembered appellant's eyes. Hesprich said he readily identified appellant from the photo array three days after he was shot.

After reviewing the testimony and the photo array, we conclude that appellant has not shown error. The necklace is not suggestive. It is tucked away, has at most a framing effect similar to two other subjects' undershirts protruding from sweatshirts, and was not a factor in the identification, according to Hesprich. There was no other evidence that the array or its presentation was suggestive. Nevertheless, we have examined the *Biggers* factors and find that Hesprich's observation of his assailant—particularly when held at gunpoint—and his quick and certain identification of appellant three days after the robbery provide confidence in the integrity of the identification. Appellant makes much of disparities between appellant's description and his actual height and weight. We conclude that a difference of one inch (appellant described as 6'4 and appellant's attorney asserted he was 6'3) and fifteen to twenty-five pounds (appellant described as 265 and appellant's attorney asserted he was 240 or 250 pounds) is not a disparity that shows any

improper suggestiveness in the photo array caused a substantial likelihood of irreparable misidentification. We overrule point of error three.

Appellant complains of the introduction of testimony that implied that Robinson made an out-of-court statement implicating appellant. Appellant also complains of Detective Woodfin's testimony that, after Robinson was arrested and interrogated, police then arrested appellant. Although appellant did not object at trial, he contends that the admission of testimony implying an out-of-court statement by Robinson presents fundamental error. He argues that it denied him his constitutional right to confront Robinson as a witness against him.

Appellant waived his hearsay and confrontation clause concerns by failing to object to the evidence at trial. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996). Appellant's attempt to couch the asserted violation in terms of a *Crawford*-style confrontation clause issue does not relieve him from the obligation to object at trial. *Bunton v. State*, 136 S.W.3d 355, 368-69 (Tex. App.—Austin 2004, pet. ref'd) (objection to hearsay necessary to preserve error under *Crawford v. Washington*, 541 U.S. 36 (2004)); *see also Oveal v. State*, 164 S.W.3d 735, 739 n.2 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Courson v. State*, 160 S.W.3d 125, 129 (Tex. App.—Fort Worth 2005, no pet.). In the case appellant cites for the exclusion of indirect or backdoor hearsay, the defendant made a hearsay objection. *See Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989). The court describes the error in admitting indirect hearsay over objection as affecting "substantial" rights and meriting reversal, but not as "fundamental" error allowing reversal without objection at trial. *See id*. at 115. Because there was an objection at trial, the *Schaffer* court did not have to determine

10

whether the admission of this evidence was fundamental error. While *Blue v. State* describes fundamental error in a trial judge's comments about his desire for a defendant to plead guilty, that case does not hold that admission of indirect hearsay without objection constitutes fundamental error. *See* 41 S.W.3d 129, 130-32 (Tex. Crim. App. 2000). If the admission of classic hearsay in violation of the confrontation clause without objection does not constitute fundamental error, *see Wright*, 28 S.W.3d at 536, we are not persuaded that admission of indirect hearsay without objection constitutes fundamental error.

Even if the court had erroneously admitted the evidence over objection, the admission did not affect a substantial right of appellant. Such an error must have a substantial and injurious effect or influence in determining the jury's verdict. *Ford v. State*, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002). A substantial right is not affected if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Id*. Hesprich's unequivocal out-of-court identification, his in-court identification of appellant, and his opportunity to observe defendant before the robbery assure us that an oblique indication that Robinson's statements led police to include appellant's photo in an array submitted to Hesprich did not have a substantial and injurious effect in determining the jury's verdict. We overrule point of error four.

Appellant contends that a conviction cannot be had upon uncorroborated accomplice testimony. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).

11

A critical flaw in this argument is that Robinson, appellant's accomplice, did not testify at trial. Only in-court accomplice testimony is subject to the article 38.14 requirement of corroboration. *Bingham v. State*, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995) (op. on reh'g); *Maynard v. State*, 166 S.W.3d 403, 410 (Tex. App.—Austin 2005, pet. ref'd).

Even if the indirect hearsay testimony described above were somehow to trigger the accomplice testimony rule, appellant has not shown error. To weigh the sufficiency of corroborative evidence, we eliminate from consideration the accomplice witness testimony and then examine the remaining testimony and evidence to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). Non-accomplice evidence need not be strong enough to establish the defendant's guilt beyond a reasonable doubt, nor must it directly link the defendant to the commission of the offense. *Id*. Hesprich's identification of appellant and testimony that appellant held a gun to Hesprich's head and forced him to relinquish his watch, wallet, and cell phone tend to connect appellant to the commission of the aggravated robbery. We overrule point of error five.

We overrule all of appellant's points of error and affirm the judgment.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   May 18, 2006

Do Not Publish

12