TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00337-CR







Marcus Bernard Washington, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0980499, HONORABLE JON N. WISSER, JUDGE PRESIDING








 Appellant Marcus Bernard Washington was convicted of sexual assault of a child. 
See Tex. Penal Code Ann. § 22.011(a)(2)(A) (West Supp. 2000). The trial court assessed
appellant's punishment at imprisonment for twelve years. In eleven points of error, appellant
asserts the trial court erred during jury selection and in the admission of evidence. We will
overrule appellant's points of error and affirm the judgment.

 In his first point of error, appellant complains that the trial court reversibly erred
in denying his challenge for cause of veniremember Merrick. Even if the trial court errs in
denying a defendant's challenge of a veniremember for cause, to preserve error, the defendant
must (1) use all of his peremptory challenges, (2) ask for and be refused additional peremptory
challenges, and (3) be forced to take an identified objectionable juror whom defendant would not
otherwise have accepted had the trial court granted his challenge for cause or granted him
additional peremptory challenges. Colella v. State, 915 S.W.2d 834, 843 (Tex. Crim. App.
1995); Moreno v. State, 587 S.W.2d 405, 407-08 (Tex. Crim. App. 1979); Wolfe v. State, 178
S.W.2d 274, 281 (Tex. Crim. App. 1944); Garcia v. State, 16 S.W.3d 401, 408 (Tex. App.--El
Paso 2000, pet. ref'd). Here, although appellant's challenge for cause of veniremember Merrick
was overruled and appellant exercised a peremptory challenge against Merrick, exhausted his
peremptory challenges, and was denied additional challenges, counsel merely stated that he was
required to accept "one or two objectionable jurors" without identifying and naming the
objectionable juror or jurors. By not identifying and naming the objectionable juror or jurors
whom he was required to accept for jury service, appellant failed to preserve for appellate review
the complaint he has presented. Appellant's first point of error is overruled.

 In his second point of error, appellant asserts that the trial court reversibly erred
by granting the State's challenge for cause of veniremember Christensen. When the trial court
grants the State's challenge of a veniremember for cause, to obtain reversal even if the ruling was
erroneous, an appellant must show that the error actually deprived him of a fair and impartial jury. 
Ladd v. State, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999); Brooks v. State, 990 S.W.2d 278, 289
(Tex. Crim. App. 1999). The erroneous excusing of a veniremember challenged for cause by the
State will call for reversal only if the record shows that the error deprived the appellant of a
lawfully constituted jury. Jones v. State, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998). 
Appellant's argument complains only of the court's ruling. Appellant does not argue that the
alleged error deprived him of a fair and impartial jury. The record does not show that the alleged
error deprived him of a lawfully constituted jury. Appellant's second point of error is overruled.

 In his third point of error, appellant urges that the "trial court erred in overruling
appellant's Batson objection to the State's peremptory strike of veniremember Stewart."


On appeal of a Batson challenge, this Court must apply a "clear error" standard of
review. Lopez v. State, 940 S.W.2d 388, 390 (Tex. App.--Austin 1997), pet.
ref'd, 954 S.W.2d 774 (Tex. Crim. App. 1997) (citing Hernandez v. New York,
500 U.S. 352, 364-65 (1991). In applying this standard, we must review all of the
evidence in the light most favorable to the district court's ruling and then determine
if the ruling was clearly erroneous. If, after reviewing all the evidence, we cannot
say that the trial court's ruling was clearly erroneous, we must uphold the ruling
even if this Court would have weighed the evidence differently had we been sitting
as the trier of fact. Lopez, 940 S.W.2d at 390. For us to conclude that the trial
court's decision was clearly erroneous, we must be left with a "definite and firm
conviction that a mistake has been committed." Vargas v. State, 838 S.W.2d 552,
554 (Tex. Crim. App. 1992).

 

Great deference to the trial court's ruling is especially appropriate in the review of
a Batson challenge because the credibility of the prosecutor's explanation is the
heart of the matter and the trial court is in the best position to make that judgment.



Mandujano v. State, 966 S.W.2d 816, 819 (Tex. App.--Austin 1998, pet. ref'd) (footnote
omitted).

 Appellant is African-American. One African-American served on the jury. Four
African-American veniremembers were peremptorily challenged by the State. Three of these
veniremembers were challenged because they or their close relatives had been charged with or
convicted of offenses similar to the offense alleged in this case. Challenges for reasons such as
these have been held to be race-neutral. Emerson v. State, 851 S.W.2d 269, 272 (Tex. Crim.
App. 1993); Vargas v. State, 838 S.W.2d at 555; Garcia v. State, 833 S.W.2d 564, 567 (Tex.
App.--Dallas 1992), aff'd, 868 S.W.2d 337 (Tex. Crim. App. 1993).

 The State challenged Stewart, an African-American, because his wife was a
registered nurse. The State also challenged peremptorily a physician and a nurse, neither of whom
was African-American. At the trial court's direction, the prosecutor responded to appellant's
Batson objection. She stated there was no medical or DNA evidence which the State could offer
in the trial of this case. She said the State felt that people in the medical field or those closely
related to people in the medical field would be concerned about the absence of medical and DNA
evidence and more likely than other veniremembers to question the absence of such medical and
DNA evidence. At trial, defense counsel's response to the State's explanation was, "I don't think
there's sufficient reason for striking him." In similar circumstances when the State could not offer
medical testimony in a sexual assault prosecution, the peremptory challenge of a registered nurse
was held race-neutral. Emerson, 851 S.W.2d at 272.

 On appeal, appellant argues that if Stewart had served as a juror he could not have
discussed the evidence or the lack of evidence in the case with his wife. While this may be true,
it was Stewart's association with his wife and his knowledge of her profession as a registered nurse
gained prior to trial that led the State to its belief that he would be more likely than other
veniremembers to question the absence of medical and DNA evidence in a sexual assault case.

 On appeal, appellant also complains of disparate treatment between Stewart and
veniremember Fisher, who was white. The validity of his complaint is not supported by the
record. We are unable to determine from the record before us that Fisher worked in the medical
field or was related to anyone who did. Although the record indicates that veniremembers
completed a questionnaire concerning their background and employment, no questionnaires were
included in the appellate record. During voir dire, Fisher stated that: "I am an assistant coach for
a youth softball team and I used to be a pre-K teacher and an Austin school bus driver." 
Moreover, although appellant claims that Fisher was "in the strike zone," it appears the trial judge
correctly determined that she was not. The last veniremember selected to serve as a juror was
veniremember thirty-five. Fisher was veniremember thirty-nine and did not serve as a juror. 
Furthermore, the disparity issue was not raised in the trial court before the trial court ruled.

 The State offered a plausible explanation for its peremptory challenge of
veniremember Stewart. The trial court's ruling was not clearly erroneous; we overrule appellant's
third point of error.

 In his appellate brief, appellant has combined for argument his fourth, fifth, sixth,
and seventh points of error in which he asserts that the trial court committed reversible error in
admitting in evidence "extraneous acts evidence" over his "relevancy," "Rule 404(b)," "Rule 403,"
and lack of proper notice objections. A summary of the pertinent evidence is necessary.

 Appellant, who was thirty-two years old, lived with his sister, Marita Washington
and her three young children in a three bedroom apartment. Sixteen-year-old P.M. was
occasionally employed to baby-sit Marita's children. On the night the offense was committed,
P.M. was baby-sitting the children while Marita had gone out to celebrate her birthday. On that
night, two young friends of Marita's children came to spend the night. The two young visitors
were accompanied by their fourteen-year-old sister, J.D. J.D. had not known P.M., but decided
to stay with P.M. and listen to music and play cards. P.M. had met appellant but she understood
he would not be at home that evening. J.D. did not know appellant.

 Later in the evening, appellant came home. Still later, appellant left the apartment
and returned bringing wine coolers for P.M. and J.D. to drink. The girls drank the alcoholic
beverage provided by appellant. Appellant asked J.D. how old she was. J.D. did not answer but
P.M. said J.D. was sixteen. Appellant asked J.D. how she would react if an older guy did
something to her if she really was sixteen years old. Appellant challenged J.D. to prove that she
was sixteen, and said he could test her to see if she was sixteen. Appellant then gave J.D. an
open-mouth intimate "boy friend-girl friend type of kiss." J.D. "froze up and moved back."

 P.M. and J.D. continued to listen to music. Appellant remained in the room with
them. Appellant kept touching the girls, trying to converse with them, trying to kiss them, and
acting in a "flirtatious" way toward J.D. J.D. was nervous, trembling, and her knees were
shaking. Appellant told her to stop shaking her knees but she could not "control it." When P.M.
left the room, appellant came close to J.D. and "hovering over" her told her he would not hurt her
as he put his hand down inside the front of her pants. P.M. came back into the room interrupting
what appellant was doing to J.D.

 The girls continued to listen to music and appellant continued to harass J.D. about 
proving her age. After expressing his belief that J.D. could not handle him, he turned his attention
toward P.M. Appellant started "messing with" P.M. and repeatedly told her he wanted to tell her
something. To avert appellant's attention, P.M. got up and entered the bathroom. Appellant
followed P.M. into the bathroom, turned out the light, and shut the door. Appellant took P.M.'s
clothes down and penetrated her vagina with his penis. Appellant did not ejaculate in her vagina
but "it was like right on the outside area." Appellant then gave P.M. a towel and told her to clean
herself up because he did not want to have any kids.

 While appellant and P.M. were in the bathroom, J.D. answered a telephone call that
was for P.M. J.D. knocked on the bathroom door telling P.M. that she had a call but P.M. did
not answer. When P.M. came out of the bathroom, unlike when she entered, her T-shirt was
hanging over her shorts. P.M. then made a call to her friend David. Appellant came to the door
and gestured with his hand for J.D. to come with him. Being apprehensive, J.D. did not go to see
what appellant wanted. J.D. "was kind of more worried about what was wrong with P.M. . . .
she was acting different." J.D. testified "she [P.M.] just wanted to get away--from there at least." 
The girls went to a convenience store and met P.M.'s friend, David.

 During the time appellant's misconduct was taking place, the younger children were
in another room. Marita's boyfriend, a Fort Hood serviceman, came to the apartment but stayed
in Marita's bedroom or in the living room watching a basketball game on television.

 Appellant contended at trial and contends on appeal that J.D.'s testimony about
appellant placing his hand inside J.D.'s pants was erroneously admitted over his objections. The
State argued at trial and maintains on appeal that the complained of evidence was admissible as
the "same transaction contextual evidence," because its admission was necessary for "the jury to
evaluate the evidence in its proper context instead of having to evaluate it in a vacuum." The trial
court overruled appellant's objections. In explaining its ruling, the court noted that cases like this
are determined on the credibility of the witnesses and evidence that aids the jury in this respect
should be admitted. The court found this evidence "contextual . . . showing the context in which
the offense was committed." The court also found that it showed appellant's intent, an exception
to Texas Rule of Evidence 404(b). See Tex. R. Evid. 404(b). The court went on to find that this
evidence, although prejudicial, was not unfairly prejudicial and that its probative value outweighed
any prejudice.

 The Court of Criminal Appeals has made a distinction between "background
contextual evidence" and "same transaction contextual evidence." Rogers v. State, 853 S.W.2d
29, 33 (Tex. Crim. App. 1993); Mayes v. State, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991);
Kiser v. State, 893 S.W.2d 277, 283 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd). In this
case, there has been no suggestion that the evidence complained of was admissible as background
contextual evidence. The controversy between appellant and the State is whether the evidence
complained of by appellant was same transactional contextual evidence. "Same transaction
contextual evidence" has been defined as evidence that "imparts to the trier of fact information
essential to understanding the context and circumstances of events which, although legally separate
offenses, are blended or interwoven." Comacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App.
1993); accord Jackson v. State, 927 S.W.2d 740, 743 (Tex. App.--Texarkana 1996, no pet.);
Norrid v. State, 925 S.W.2d 342, 349 (Tex. App.--Fort Worth 1996, no pet.). "As such, it is
admissible, not for the purpose of showing character conformity, but to illuminate the nature of
the crime alleged." Comacho, 864 S.W.2d at 532; accord Norrid, 925 S.W.2d at 349. "[W]here
the offense is one continuous transaction, or another offense is a part of the case on trial or
blended or closely interwoven therewith, proof of all the facts is proper. [] Necessity, then, seems
to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the
time of the commission of the offense." Mayes, 816 S.W.2d at 86-87 n.4; accord Rogers, 853
S.W.2d at 33.

 From our summary of the evidence, it is apparent that J.D.'s testimony about which
appellant complains, although evidence of a separate bad act or offense, was evidence so blended
and interwoven with the other evidence that it was essential for the jury's understanding of the
circumstances and the context of events including the charged offense. The entire episode was a
continuous transaction--a course of sexual abuse of the two girls. We hold that J.D.'s testimony
that appellant put his hand into the front of her pants was "same transaction contextual evidence." 

 Same transaction contextual evidence is relevant under Texas Rule of Evidence 401. 
Tex. R. Evid. 401; Lockhart v. State, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992); Broussard
v. State, 999 S.W.2d 477, 480-81 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd); Smith v.
State, 949 S.W.2d 333, 337 (Tex. App.--Tyler 1996, pet. ref'd). Evidence of the context is
almost always admissible so that a jury may have the offense placed in its proper setting so that
all evidence may be realistically evaluated. Skillern v. State, 890 S.W.2d 849, 865 (Tex.
App.--Austin 1994, pet. ref'd). Questions of relevance should be left largely to the trial court
relying upon its own observations and experience, and its decision will not be reversed absent an
abuse of discretion. Id. Evidence of other crimes, or bad acts that a defendant may have
committed, cannot be introduced at the guilt-innocence phase of trial to show that the defendant
acted in conformity with his criminal nature and therefore committed the crime for which he is on
trial. Lockhart, 847 S.W.2d at 570; Montgomery v. State, 810 S.W.2d 372, 386 (Tex. Crim.
App. 1991) (op. on reh'g); Abdnor v. State, 808 S.W.2d 476, 478 (Tex. Crim. App. 1991). 
However, bad act or extraneous offense evidence may be admitted for other purposes. Tex. R.
Evid. 404(b).

 Although Rule 404(b) enumerates specific purposes for which other crimes,
wrongs, or acts are admissible, the Rule's list of other purposes is "neither mutually exclusive nor
collectively exhaustive." Montgomery, 810 S.W.2d at 388. One of the other purposes
unenumerated in Rule 404(b) for which bad act or extraneous offense evidence is admissible is
same transaction contextual evidence. Nelson v. State, 864 S.W.2d 496, 498 (Tex. Crim. App.
1993); Rogers, 853 S.W.2d at 33; Barber v. State, 989 S.W.2d 822, 831 (Tex. App.--Fort Worth
1999, pet. ref'd). Rarely will the prejudicial value render inadmissible any evidence that proves
the context of the offense. Lockhart, 847 S.W.2d at 571-72; Mann v. State, 718 S.W.2d 741, 744
(Tex. Crim. App. 1986).

 Rule 404(b)'s requirement that the State give a defendant reasonable notice before
trial of its intention to offer evidence of other crimes, wrongs, or acts does not apply when the
other crimes, wrongs, or acts arise "in the same transaction." Tex. R. Evid 404(b); Brown v.
State, 978 S.W.2d 708, 712 (Tex. App.--Amarillo 1998, pet. ref'd); Hodge v. State, 940 S.W.2d
316, 319 (Tex. App.--Eastland 1997, pet. ref'd). Because the complained of evidence was same
transaction contextual evidence, the State did not need to give advance notice that it would offer
such evidence. However, upon first learning of this evidence the weekend before trial, the State
gave notice to appellant's counsel.

 We hold that the trial court did not abuse its discretion in overruling appellant's
relevance, Rule 404(b), Rule 403, and notice objections to the State's offer and the Court's
admission of evidence that appellant put his hand inside the front of J.D.'s pants. Appellant's
fourth, fifth, sixth, and seventh points of error are overruled.

 In his eighth point of error, appellant urges that the "trial court reversibly erred in
overruling appellant's objection to Manley's testimony that he didn't file cases he believed were
false." Austin police Detective Brian Manley, who had formerly been in the Child Abuse
Division, investigated this case. In cross-examination, defense counsel asked Manley to name the
witnesses he had interviewed in his investigation. Manley named P.M., P.M.'s mother, J.D.,
Marita Washington, Columbus Harper, and appellant. Manley had also referred P.M. to Dr. Beth
Nauert, a physician at the Children's Advocacy Center, and Manley had read Dr. Nauert's report. 
Defense counsel then asked Manley:


 Q. Okay. Now then, in your investigation of child abuse reports, do you
sometimes find that they are false? 


 A. I have found them to be false in the past, yes. 


 Q. Okay. Is there any particular pattern that develops that you notice when they
turn out to be false? 


 A. Not necessarily a pattern. There can be multiple reasons a child would choose
to do something like this, you know.



 Appellant's complaint relates to the prosecutor's redirect-examination as follows:



 Q. Okay. And in cases where you believe that the report of child abuse to be
false -- in those particular cases you don't file the case, do you?


 A. No, we do not.


 [Prosecutor]: No other questions.


 [Defense Counsel]:  Well, I'm sorry, Your Honor, I was extremely slow on that. What we basically now have is a witness expressing an opinion about the
truthfulness or falseness. I just got a little startled on that. I would object to
that last question and answer and ask that it be stricken. He doesn't get to
express an opinion about whether something is true or false, and that appears
to be what the question and answer elicited.


 [Prosecutor]:  Your Honor, I didn't ask that particular question, and Mr. Green in his original cross-examination asked the detective if in the past he's believed
some cases to be false accusations.


 THE COURT: Okay. We'll overrule the objection.



 Appellant argues: "Since he [Manley] also testified he filed this case, this was an
opinion that the allegations were true, i.e., the State's witnesses were telling the truth and the
defense witnesses were not." Although Manley may have filed charges in this case, he did not
testify that he actually filed the charges in this particular case.

 A defendant must timely object to preserve an error in the admission of evidence. 
Tex. R. App. P. 33.1(a)(1); Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). An
objection should be made as soon as the ground for objection becomes apparent. Dinkins, 894
S.W.2d at 355. In general, this occurs when the evidence is admitted. Id. Therefore, if a
question clearly calls for an objectionable response, a defendant should make an objection before
the witness responds. Id.; Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991);
Angelo v. State, 977 S.W.2d 169, 179 (Tex. App.--Austin 1998, pet. ref'd). Here, the question
was asked, answered, and the witness passed, before the objection was made. Defense counsel
acknowledged his tardy objection. The error claimed on appeal was not preserved for appellate
review by a timely trial objection. Appellant's eighth point of error is overruled.

 In points of error nine, ten, and eleven, appellant complains that the trial court, at
the punishment phase of trial, erred in admitting in evidence State's Exhibits 2, 4, and 4A. 
Appellant waived a jury at the punishment phase of trial and elected to have the trial court assess
his punishment. For the trial court's consideration in assessing appellant's punishment, the State
offered exhibits 2, 3, 4, and 4A as evidence of appellant's prior criminal record. These exhibits
were offered to show that appellant had been convicted in Arkansas of the felony offense of a
terroristic act. Appellant not only contends that these exhibits were erroneously admitted in
evidence but also that the exhibits do not show beyond a reasonable doubt that he was the Marcus
Washington who was convicted in Arkansas. Therefore, he argues the trial court's consideration
of the Arkansas conviction was harmful and reversible error.

 We will first consider State's Exhibits 4 and 4A. These exhibits include several
documents pertaining to Cause Number 97-2 in the Circuit Court of Pulaski County, Arkansas,
which were authenticated by the clerk of the circuit court by signature and seal of the court. One
of the included documents is a judgment reflecting that a Marcus Washington was convicted on
July 3, 1997, of the offense of a terroristic act. Washington was placed on probation for sixty
months. The judgment gives Washington's birth date as March 27, 1965. The document setting
the conditions of probation gives his social security number as XXX-XX-XXXX and his address as 605
Master Pass #1111, Austin, Texas 78725. Several documents in Exhibit 4 bear a signature of
Marcus Washington. The trial court compared these signatures with appellant's known signature
on State's Exhibit 3 and found the signature on the documents were appellant's. Appellant's
signature, his social security number, date of birth, and address found in Exhibits 4 and 4A
correspond and match other evidence in the record.(1)

 The trial court did not err in admitting State's Exhibits 4 and 4A even though those
exhibits were not connected to appellant by fingerprint identification. The evidence is sufficient
to prove beyond a reasonable doubt that appellant was the Marcus Washington convicted in Cause
Number 97-2 in Pulaski County, Arkansas. The trial court could properly consider appellant's
prior Arkansas conviction in assessing punishment. 

 We now consider appellant's complaint relating to Exhibit 2. State's Exhibit 2 was
a fingerprint card bearing appellant's signature and social security number. An attached page
shows a "charged offense of TERRORISTIC ACT 2CTS" and "TERRORISTIC THREATENING." 
The only purported authentication shown on this exhibit is a Pulaski County, Arkansas, Notary
Public's handwritten statement "Subscribed and sworn to before me, this 24th day of March 1999." 
There is insufficient authentication and evidence to connect this document with the judgment in
State's Exhibits 4 and 4A.

 State's Exhibit 3 was a fingerprint card of appellant's fingerprints made by a
fingerprint expert who testified he had made the card at the time of trial. The expert testified that
appellant also signed the card. The expert also testified that appellant's fingerprints on Exhibit
3 matched the fingerprints on State's Exhibit 2. State's Exhibit 2 was not properly authenticated
or connected to the judgment in State's Exhibit 4, and should not have been admitted in evidence. 
However, Exhibit 2 did not furnish any additional detrimental evidence against appellant. The
error in admitting Exhibit 2 in evidence did not substantially affect appellant's rights and must be
disregarded. See Tex. R. App. P. 44.2 (b). Appellant's ninth, tenth, and eleventh points of error
are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: December 14, 2000

Do Not Publish























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1.   The State's brief correctly notes in greater detail the identifiers found in Exhibits 4 and
4A that match other evidence in the record:


The defendant named in the judgment in Pulaski County, Arkansas, is Marcus
Washington, whose date of birth was March 27, 1965. His mother testified
in the instant case that he was 34 years of age in May of 1999. R.R.IV: 1,4. 
His address according to the "Conditions of release on probation" documents
dated "7-3-97" in SX4-A was 605 Masterson Pass #1111, Austin, Texas, and
his social security number was XXX-XX-XXXX, the same social security number
and address shown in his Calcasieu Lumber Company records. S.X4-A, p. 6,
DX2, p. 5. His sister testified that the appellant had moved into her apartment
in December 1996. R.R.IV: 5, 27. The victim testified that the appellant's
sister Marita's apartment was at 605 Masterson Pass in Austin and that the
appellant had moved in around January or February of 1997. R.R.III: 10, 13,
15. The appellant's Calcasieu records show that he was employed at One
Source Lumber, 400 East 13th, NLR, AR, from January 1991, to December
1996, and that his reason for leaving was "moved to Austin." DX2-pp. 6, 9. 
The information in SX4-A indicates that the Marcus Washington in that case
had been arrested on March 23, 1996, and released on bond. SX4-A, p. 15. 
An arrest report in the same exhibit shows that Marcus Washington was
arrested in Austin, Texas on June 18, 1997, and extradited in Pulaski County
Cause numbered variously as CR 97000002, 97-000002, and CR 97-2. SX4-A, pp. 1, 10, 14. The Calcasieu records indicate that Marcus Washington was
hired effective May 27, 1997 and dismissed effective June 17, 1997, because
he "was arrested and did not call." DX2-pp 404. The State submits that the
evidence proves that the Marcus Washington convicted in Cause CR 97-
000002 in the Circuit Court of Pulaski, Arkansas, is the appellant. 


even though those
exhibits were not connected to appellant by fingerprint identification. The evidence is sufficient
to prove beyond a reasonable doubt that appellant was the Marcus Washington convicted in Cause
Number 97-2 in Pulaski County, Arkansas. The trial court could properly consider appellant's
prior Arkansas conviction in assessing punishment. 

 We now consider appellant's complaint relating to Exhibit 2. State's Exhibit 2 was
a fingerprint card bearing appellant's signature and social security number. An attached page
shows a "charged offense of TERRORISTIC ACT 2CTS" and "TERRORISTIC THREATENING." 
The only purported authentication shown on this exhibit is a Pulaski County, Arkansas, Notary
Public's handwritten statement "Subscribed and sworn to before me, this 24th day of March 1999." 
There is insufficient authentication and evidence to connect this document with the judgment in
State's Exhibits 4 and 4A.

 State's Exhibit 3 was a fingerprint card of appellant's fingerprints made by a
fingerprint expert who testified he had made the card at the time of trial. The expert testified that
appellant also signed the card. The expert also testified that appellant's fingerprints on Exhibit
3 matched the fingerprints on State's Exhibit 2. State's Exhibit 2 was not properly authenticated
or connected to the judgment in State's Exhibit 4, and should not have been admitted in evidence. 
However, Exhibit 2 did not furnish any additional detrimental evidence against appellant. The
error in admitting Exhibit 2 in evidence did not substantially affect appellant's rights and must be
disregarded. See Tex. R. App. P. 44.2 (b). Appellant's ninth, tenth, and eleventh points of error
are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: December 14, 2000

Do Not Publish























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1.   The State's brief correctly notes in greater detail the identifiers found in Exhibits 4 and
4A that match other evidence in the record:


The defendant named in the judgment in Pulaski County, Arkansas, is Marcus
Washington, whose date of birth was March 27, 1965. His mother testified
in the instant case that he was 34 years of age in May of 1999. R.R.IV: 1,4. 
His address according to the "Conditions of release on probation" documents
dated "7-3-97" in SX4-A was 605 Masterson Pass #1111, Austin, Texas