# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-99-00337-CR
===============

**Marcus Bernard Washington, Appellant**

**v.**

**The State of Texas, Appellee**

============================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 0980499, HONORABLE JON N. WISSER, JUDGE PRESIDING
============================================================

Appellant Marcus Bernard Washington was convicted of sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011(a)(2)(A) (West Supp. 2000). The trial court assessed appellant's punishment at imprisonment for twelve years. In eleven points of error, appellant asserts the trial court erred during jury selection and in the admission of evidence. We will overrule appellant's points of error and affirm the judgment.

In his first point of error, appellant complains that the trial court reversibly erred in denying his challenge for cause of veniremember Merrick. Even if the trial court errs in denying a defendant's challenge of a veniremember for cause, to preserve error, the defendant must (1) use all of his peremptory challenges, (2) ask for and be refused additional peremptory challenges, and (3) be forced to take an identified objectionable juror whom defendant would

not otherwise have accepted had the trial court granted his challenge for cause or granted him additional peremptory challenges. *Colella v. State*, 915 S.W.2d 834, 843 (Tex. Crim. App. 1995); *Moreno v. State*, 587 S.W.2d 405, 407-08 (Tex. Crim. App. 1979); *Wolfe v. State*, 178 S.W.2d 274, 281 (Tex. Crim. App. 1944); *Garcia v. State*, 16 S.W.3d 401, 408 (Tex. App.—El Paso 2000, pet. ref'd). Here, although appellant's challenge for cause of veniremember Merrick was overruled and appellant exercised a peremptory challenge against Merrick, exhausted his peremptory challenges, and was denied additional challenges, counsel merely stated that he was required to accept "one or two objectionable jurors" without identifying and naming the objectionable juror or jurors. By not identifying and naming the objectionable juror or jurors whom he was required to accept for jury service, appellant failed to preserve for appellate review the complaint he has presented. Appellant's first point of error is overruled.

In his second point of error, appellant asserts that the trial court reversibly erred by granting the State's challenge for cause of veniremember Christensen. When the trial court grants the State's challenge of a veniremember for cause, to obtain reversal even if the ruling was erroneous, an appellant must show that the error actually deprived him of a fair and impartial jury. *Ladd v. State*, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999); *Brooks v. State*, 990 S.W.2d 278, 289 (Tex. Crim. App. 1999). The erroneous excusing of a veniremember challenged for cause by the State will call for reversal only if the record shows that the error deprived the appellant of a lawfully constituted jury. *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998). Appellant's argument complains only of the court's ruling. Appellant does not argue that the alleged error deprived him of a fair and impartial jury. The record does not

2

show that the alleged error deprived him of a lawfully constituted jury. Appellant's second point of error is overruled.

In his third point of error, appellant urges that the "trial court erred in overruling appellant's *Batson* objection to the State's peremptory strike of veniremember Stewart."

> On appeal of a *Batson* challenge, this Court must apply a "clear error" standard of review. *Lopez v. State*, 940 S.W.2d 388, 390 (Tex. App.—Austin 1997), *pet. ref'd*, 954 S.W.2d 774 (Tex. Crim. App. 1997) (citing *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991). In applying this standard, we must review all of the evidence in the light most favorable to the district court's ruling and then determine if the ruling was clearly erroneous. If, after reviewing all the evidence, we cannot say that the trial court's ruling was clearly erroneous, we must uphold the ruling even if this Court would have weighed the evidence differently had we been sitting as the trier of fact. *Lopez*, 940 S.W.2d at 390. For us to conclude that the trial court's decision was clearly erroneous, we must be left with a "definite and firm conviction that a mistake has been committed." *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).
>
> Great deference to the trial court's ruling is especially appropriate in the review of a *Batson* challenge because the credibility of the prosecutor's explanation is the heart of the matter and the trial court is in the best position to make that judgment.

*Mandujano v. State*, 966 S.W.2d 816, 819 (Tex. App.—Austin 1998, pet. ref'd) (footnote omitted).

Appellant is African-American. One African-American served on the jury. Four African-American veniremembers were peremptorily challenged by the State. Three of these veniremembers were challenged because they or their close relatives had been charged with or convicted of offenses similar to the offense alleged in this case. Challenges for reasons such as these have been held to be race-neutral. *Emerson v. State*, 851 S.W.2d 269, 272 (Tex. Crim.

3

App. 1993); *Vargas v. State*, 838 S.W.2d at 555; *Garcia v. State*, 833 S.W.2d 564, 567 (Tex. App.—Dallas 1992), *aff'd*, 868 S.W.2d 337 (Tex. Crim. App. 1993).

The State challenged Stewart, an African-American, because his wife was a registered nurse. The State also challenged peremptorily a physician and a nurse, neither of whom was African-American. At the trial court's direction, the prosecutor responded to appellant's *Batson* objection. She stated there was no medical or DNA evidence which the State could offer in the trial of this case. She said the State felt that people in the medical field or those closely related to people in the medical field would be concerned about the absence of medical and DNA evidence and more likely than other veniremembers to question the absence of such medical and DNA evidence. At trial, defense counsel's response to the State's explanation was, "I don't think there's sufficient reason for striking him." In similar circumstances when the State could not offer medical testimony in a sexual assault prosecution, the peremptory challenge of a registered nurse was held race-neutral. *Emerson*, 851 S.W.2d at 272.

On appeal, appellant argues that if Stewart had served as a juror he could not have discussed the evidence or the lack of evidence in the case with his wife. While this may be true, it was Stewart's association with his wife and his knowledge of her profession as a registered nurse gained prior to trial that led the State to its belief that he would be more likely than other veniremembers to question the absence of medical and DNA evidence in a sexual assault case.

On appeal, appellant also complains of disparate treatment between Stewart and veniremember Fisher, who was white. The validity of his complaint is not supported by the

4

record. We are unable to determine from the record before us that Fisher worked in the medical field or was related to anyone who did. Although the record indicates that veniremembers completed a questionnaire concerning their background and employment, no questionnaires were included in the appellate record. During voir dire, Fisher stated that: "I am an assistant coach for a youth softball team and I used to be a pre-K teacher and an Austin school bus driver." Moreover, although appellant claims that Fisher was "in the strike zone," it appears the trial judge correctly determined that she was not. The last veniremember selected to serve as a juror was veniremember thirty-five. Fisher was veniremember thirty-nine and did not serve as a juror. Furthermore, the disparity issue was not raised in the trial court before the trial court ruled.

The State offered a plausible explanation for its peremptory challenge of veniremember Stewart. The trial court's ruling was not clearly erroneous; we overrule appellant's third point of error.

In his appellate brief, appellant has combined for argument his fourth, fifth, sixth, and seventh points of error in which he asserts that the trial court committed reversible error in admitting in evidence "extraneous acts evidence" over his "relevancy," "Rule 404(b)," "Rule 403," and lack of proper notice objections. A summary of the pertinent evidence is necessary.

Appellant, who was thirty-two years old, lived with his sister, Marita Washington and her three young children in a three bedroom apartment. Sixteen-year-old P.M. was occasionally employed to baby-sit Marita's children. On the night the offense was committed, P.M. was baby-sitting the children while Marita had gone out to celebrate her birthday. On that

5

night, two young friends of Marita's children came to spend the night. The two young visitors were accompanied by their fourteen-year-old sister, J.D. J.D. had not known P.M., but decided to stay with P.M. and listen to music and play cards. P.M. had met appellant but she understood he would not be at home that evening. J.D. did not know appellant.

Later in the evening, appellant came home. Still later, appellant left the apartment and returned bringing wine coolers for P.M. and J.D. to drink. The girls drank the alcoholic beverage provided by appellant. Appellant asked J.D. how old she was. J.D. did not answer but P.M. said J.D. was sixteen. Appellant asked J.D. how she would react if an older guy did something to her if she really was sixteen years old. Appellant challenged J.D. to prove that she was sixteen, and said he could test her to see if she was sixteen. Appellant then gave J.D. an open-mouth intimate "boy friend-girl friend type of kiss." J.D. "froze up and moved back."

P.M. and J.D. continued to listen to music. Appellant remained in the room with them. Appellant kept touching the girls, trying to converse with them, trying to kiss them, and acting in a "flirtatious" way toward J.D. J.D. was nervous, trembling, and her knees were shaking. Appellant told her to stop shaking her knees but she could not "control it." When P.M. left the room, appellant came close to J.D. and "hovering over" her told her he would not hurt her as he put his hand down inside the front of her pants. P.M. came back into the room interrupting what appellant was doing to J.D.

The girls continued to listen to music and appellant continued to harass J.D. about proving her age. After expressing his belief that J.D. could not handle him, he turned his attention toward P.M. Appellant started "messing with" P.M. and repeatedly told her he wanted

6

to tell her something. To avert appellant's attention, P.M. got up and entered the bathroom. Appellant followed P.M. into the bathroom, turned out the light, and shut the door. Appellant took P.M.'s clothes down and penetrated her vagina with his penis. Appellant did not ejaculate in her vagina but "it was like right on the outside area." Appellant then gave P.M. a towel and told her to clean herself up because he did not want to have any kids.

While appellant and P.M. were in the bathroom, J.D. answered a telephone call that was for P.M. J.D. knocked on the bathroom door telling P.M. that she had a call but P.M. did not answer. When P.M. came out of the bathroom, unlike when she entered, her T-shirt was hanging over her shorts. P.M. then made a call to her friend David. Appellant came to the door and gestured with his hand for J.D. to come with him. Being apprehensive, J.D. did not go to see what appellant wanted. J.D. "was kind of more worried about what was wrong with P.M. . . . she was acting different." J.D. testified "she [P.M.] just wanted to get away—from there at least." The girls went to a convenience store and met P.M.'s friend, David.

During the time appellant's misconduct was taking place, the younger children were in another room. Marita's boyfriend, a Fort Hood serviceman, came to the apartment but stayed in Marita's bedroom or in the living room watching a basketball game on television.

Appellant contended at trial and contends on appeal that J.D.'s testimony about appellant placing his hand inside J.D.'s pants was erroneously admitted over his objections. The State argued at trial and maintains on appeal that the complained of evidence was admissible as the "same transaction contextual evidence," because its admission was necessary for "the jury to evaluate the evidence in its proper context instead of having to evaluate it in a vacuum." The

trial court overruled appellant's objections. In explaining its ruling, the court noted that cases like this are determined on the credibility of the witnesses and evidence that aids the jury in this respect should be admitted. The court found this evidence "contextual . . . showing the context in which the offense was committed." The court also found that it showed appellant's intent, an exception to Texas Rule of Evidence 404(b). *See* Tex. R. Evid. 404(b). The court went on to find that this evidence, although prejudicial, was not unfairly prejudicial and that its probative value outweighed any prejudice.

The Court of Criminal Appeals has made a distinction between "background contextual evidence" and "same transaction contextual evidence." *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991); *Kiser v. State*, 893 S.W.2d 277, 283 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). In this case, there has been no suggestion that the evidence complained of was admissible as background contextual evidence. The controversy between appellant and the State is whether the evidence complained of by appellant was same transactional contextual evidence. "Same transaction contextual evidence" has been defined as evidence that "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Comacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *accord Jackson v. State*, 927 S.W.2d 740, 743 (Tex. App.—Texarkana 1996, no pet.); *Norrid v. State*, 925 S.W.2d 342, 349 (Tex. App.—Fort Worth 1996, no pet.). "As such, it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged." *Comacho*, 864 S.W.2d at 532; *accord Norrid*, 925 S.W.2d at

8

349. "[W]here the offense is one continuous transaction, or another offense is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper. [] Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense." *Mayes*, 816 S.W.2d at 86-87 n.4; *accord Rogers*, 853 S.W.2d at 33.

From our summary of the evidence, it is apparent that J.D.'s testimony about which appellant complains, although evidence of a separate bad act or offense, was evidence so blended and interwoven with the other evidence that it was essential for the jury's understanding of the circumstances and the context of events including the charged offense. The entire episode was a continuous transaction—a course of sexual abuse of the two girls. We hold that J.D.'s testimony that appellant put his hand into the front of her pants was "same transaction contextual evidence."

Same transaction contextual evidence is relevant under Texas Rule of Evidence 401. Tex. R. Evid. 401; *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992); *Broussard v. State*, 999 S.W.2d 477, 480-81 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Smith v. State*, 949 S.W.2d 333, 337 (Tex. App.—Tyler 1996, pet. ref'd). Evidence of the context is almost always admissible so that a jury may have the offense placed in its proper setting so that all evidence may be realistically evaluated. *Skillern v. State*, 890 S.W.2d 849, 865 (Tex. App.—Austin 1994, pet. ref'd). Questions of relevance should be left largely to the trial court relying upon its own observations and experience, and its decision will not be reversed absent an abuse of discretion. *Id.* Evidence of other crimes, or bad acts that a defendant may

have committed, cannot be introduced at the guilt-innocence phase of trial to show that the defendant acted in conformity with his criminal nature and therefore committed the crime for which he is on trial. *Lockhart*, 847 S.W.2d at 570; *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1991) (op. on reh'g); *Abdnor v. State*, 808 S.W.2d 476, 478 (Tex. Crim. App. 1991). However, bad act or extraneous offense evidence may be admitted for other purposes. Tex. R. Evid. 404(b).

Although Rule 404(b) enumerates specific purposes for which other crimes, wrongs, or acts are admissible, the Rule's list of other purposes is "neither mutually exclusive nor collectively exhaustive." *Montgomery*, 810 S.W.2d at 388. One of the other purposes unenumerated in Rule 404(b) for which bad act or extraneous offense evidence is admissible is same transaction contextual evidence. *Nelson v. State*, 864 S.W.2d 496, 498 (Tex. Crim. App. 1993); *Rogers*, 853 S.W.2d at 33; *Barber v. State*, 989 S.W.2d 822, 831 (Tex. App.—Fort Worth 1999, pet. ref'd). Rarely will the prejudicial value render inadmissible any evidence that proves the context of the offense. *Lockhart*, 847 S.W.2d at 571-72; *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986).

Rule 404(b)'s requirement that the State give a defendant reasonable notice before trial of its intention to offer evidence of other crimes, wrongs, or acts does not apply when the other crimes, wrongs, or acts arise "in the same transaction." Tex. R. Evid 404(b); *Brown v. State*, 978 S.W.2d 708, 712 (Tex. App.—Amarillo 1998, pet. ref'd); *Hodge v. State*, 940 S.W.2d 316, 319 (Tex. App.—Eastland 1997, pet. ref'd). Because the complained of evidence was same transaction contextual evidence, the State did not need to give advance notice that it would offer

10

such evidence. However, upon first learning of this evidence the weekend before trial, the State gave notice to appellant's counsel.

We hold that the trial court did not abuse its discretion in overruling appellant's relevance, Rule 404(b), Rule 403, and notice objections to the State's offer and the Court's admission of evidence that appellant put his hand inside the front of J.D.'s pants. Appellant's fourth, fifth, sixth, and seventh points of error are overruled.

In his eighth point of error, appellant urges that the "trial court reversibly erred in overruling appellant's objection to Manley's testimony that he didn't file cases he believed were false." Austin police Detective Brian Manley, who had formerly been in the Child Abuse Division, investigated this case. In cross-examination, defense counsel asked Manley to name the witnesses he had interviewed in his investigation. Manley named P.M., P.M.'s mother, J.D., Marita Washington, Columbus Harper, and appellant. Manley had also referred P.M. to Dr. Beth Nauert, a physician at the Children's Advocacy Center, and Manley had read Dr. Nauert's report. Defense counsel then asked Manley:

Q. Okay. Now then, in your investigation of child abuse reports, do you sometimes find that they are false?

A. I have found them to be false in the past, yes.

Q. Okay. Is there any particular pattern that develops that you notice when they turn out to be false?

A. Not necessarily a pattern. There can be multiple reasons a child would choose to do something like this, you know.

Appellant's complaint relates to the prosecutor's redirect-examination as follows:

11

Q. Okay. And in cases where you believe that the report of child abuse to be false -- in those particular cases you don't file the case, do you?

A. No, we do not.

[Prosecutor]: No other questions.

[Defense Counsel]: Well, I'm sorry, Your Honor, I was extremely slow on that. What we basically now have is a witness expressing an opinion about the truthfulness or falseness. I just got a little startled on that. I would object to that last question and answer and ask that it be stricken. He doesn't get to express an opinion about whether something is true or false, and that appears to be what the question and answer elicited.

[Prosecutor]: Your Honor, I didn't ask that particular question, and Mr. Green in his original cross-examination asked the detective if in the past he's believed some cases to be false accusations.

THE COURT: Okay. We'll overrule the objection.

Appellant argues: "Since he [Manley] also testified he filed this case, this was an opinion that the allegations were true, i.e., the State's witnesses were telling the truth and the defense witnesses were not." Although Manley may have filed charges in this case, he did not testify that he actually filed the charges in this particular case.

A defendant must timely object to preserve an error in the admission of evidence. Tex. R. App. P. 33.1(a)(1); *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). An objection should be made as soon as the ground for objection becomes apparent. *Dinkins*, 894 S.W.2d at 355. In general, this occurs when the evidence is admitted. *Id.* Therefore, if a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds. *Id.*; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991);

12

*Angelo v. State*, 977 S.W.2d 169, 179 (Tex. App.—Austin 1998, pet. ref'd). Here, the question was asked, answered, and the witness passed, before the objection was made. Defense counsel acknowledged his tardy objection. The error claimed on appeal was not preserved for appellate review by a timely trial objection. Appellant's eighth point of error is overruled.

In points of error nine, ten, and eleven, appellant complains that the trial court, at the punishment phase of trial, erred in admitting in evidence State's Exhibits 2, 4, and 4A. Appellant waived a jury at the punishment phase of trial and elected to have the trial court assess his punishment. For the trial court's consideration in assessing appellant's punishment, the State offered exhibits 2, 3, 4, and 4A as evidence of appellant's prior criminal record. These exhibits were offered to show that appellant had been convicted in Arkansas of the felony offense of a terroristic act. Appellant not only contends that these exhibits were erroneously admitted in evidence but also that the exhibits do not show beyond a reasonable doubt that he was the Marcus Washington who was convicted in Arkansas. Therefore, he argues the trial court's consideration of the Arkansas conviction was harmful and reversible error.

We will first consider State's Exhibits 4 and 4A. These exhibits include several documents pertaining to Cause Number 97-2 in the Circuit Court of Pulaski County, Arkansas, which were authenticated by the clerk of the circuit court by signature and seal of the court. One of the included documents is a judgment reflecting that a Marcus Washington was convicted on July 3, 1997, of the offense of a terroristic act. Washington was placed on probation for sixty months. The judgment gives Washington's birth date as March 27, 1965. The document setting the conditions of probation gives his social security number as 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 and his address as

13

605 Master Pass #1111, Austin, Texas 78725. Several documents in Exhibit 4 bear a signature of Marcus Washington. The trial court compared these signatures with appellant's known signature on State's Exhibit 3 and found the signature on the documents were appellant's. Appellant's signature, his social security number, date of birth, and address found in Exhibits 4 and 4A correspond and match other evidence in the record.[1]

---

[1] The State's brief correctly notes in greater detail the identifiers found in Exhibits 4 and 4A that match other evidence in the record:

> The defendant named in the judgment in Pulaski County, Arkansas, is Marcus Washington, whose date of birth was March 27, 1965. His mother testified in the instant case that he was 34 years of age in May of 1999. R.R.IV: 1,4. His address according to the "Conditions of release on probation" documents dated "7-3-97" in SX4-A was 605 Masterson Pass #1111, Austin, Texas, and his social security number was 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, the same social security number and address shown in his Calcasieu Lumber Company records. S.X4-A, p. 6, DX2, p. 5. His sister testified that the appellant had moved into her apartment in December 1996. R.R.IV: 5, 27. The victim testified that the appellant's sister Marita's apartment was at 605 Masterson Pass in Austin and that the appellant had moved in around January or February of 1997. R.R.III: 10, 13, 15. The appellant's Calcasieu records show that he was employed at One Source Lumber, 400 East 13th, NLR, AR, from January 1991, to December 1996, and that his reason for leaving was "moved to Austin." DX2-pp. 6, 9. The information in SX4-A indicates that the Marcus Washington in that case had been arrested on March 23, 1996, and released on bond. SX4-A, p. 15. An arrest report in the same exhibit shows that Marcus Washington was arrested in Austin, Texas on June 18, 1997, and extradited in Pulaski County Cause numbered variously as CR 97000002, 97-000002, and CR 97-2. SX4-A, pp. 1, 10, 14. The Calcasieu records indicate that Marcus Washington was hired effective May 27, 1997 and dismissed effective June 17, 1997, because he "was arrested and did not call." DX2-pp 404. The State submits that the evidence proves that the Marcus Washington convicted in Cause CR 97- 000002 in the Circuit Court of Pulaski, Arkansas, is the appellant.

The trial court did not err in admitting State's Exhibits 4 and 4A even though those exhibits were not connected to appellant by fingerprint identification. The evidence is sufficient to prove beyond a reasonable doubt that appellant was the Marcus Washington convicted in Cause Number 97-2 in Pulaski County, Arkansas. The trial court could properly consider appellant's prior Arkansas conviction in assessing punishment.

We now consider appellant's complaint relating to Exhibit 2. State's Exhibit 2 was a fingerprint card bearing appellant's signature and social security number. An attached page shows a "charged offense of TERRORISTIC ACT 2CTS" and "TERRORISTIC THREATENING." The only purported authentication shown on this exhibit is a Pulaski County, Arkansas, Notary Public's handwritten statement "Subscribed and sworn to before me, this 24th day of March 1999." There is insufficient authentication and evidence to connect this document with the judgment in State's Exhibits 4 and 4A.

State's Exhibit 3 was a fingerprint card of appellant's fingerprints made by a fingerprint expert who testified he had made the card at the time of trial. The expert testified that appellant also signed the card. The expert also testified that appellant's fingerprints on Exhibit 3 matched the fingerprints on State's Exhibit 2. State's Exhibit 2 was not properly authenticated or connected to the judgment in State's Exhibit 4, and should not have been admitted in evidence. However, Exhibit 2 did not furnish any additional detrimental evidence against appellant. The error in admitting Exhibit 2 in evidence did not substantially affect appellant's rights and must be disregarded. *See* Tex. R. App. P. 44.2 (b). Appellant's ninth, tenth, and eleventh points of error are overruled.

15

The judgment is affirmed.

_____
Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally[*]

Affirmed

Filed: December 14, 2000

Do Not Publish

[*] Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).